## Stryjewski et al. *v.* Panfil et al., Appellants.

*Church law—Unincorporated church—Constitution—Discharge of priest—Meeting—Voting at meeting—Disturbance at meeting—Appeal to peace court and public court.*

1. Where the constitution of an unincorporated church provides that "all of the members of the parish can discharge on a special meeting their parish priest," such action must be had by the congregation at large and not by an official board, or by any other body less than the membership.

2. All the members need not attend the meeting, nor vote in the affirmative; but all must have an opportunity to participate.

3. Where practically the entire membership came to a meeting, and more than one-half of the entire membership remained when a resolution to discharge the priest was acted upon, there was no question of quorum, and the result was determined by the votes cast, whether the same was more or less than a majority of the entire membership.

4. A meeting properly constituted cannot be deprived of the right to transact the business for which it is called by the refusal of certain members present to participate therein or by their capricious withdrawal therefrom.

5. A slight disturbance at a corporate meeting although it may alarm a few of the timid is not sufficient to set aside an election. To do so, it must clearly appear that there was such a display of force as ought to have intimidated men of ordinary firmness.

6. Where the constitution of a church provides that in case of some misunderstanding between the members, there should be an appeal to the "peace" court, composed of six members, three for each side, with the parish priest, before resort to a public court, a dispute as to the validity of a meeting at which the priest was discharged, is not contemplated by the provision.

Argued January 18, 1921. Appeal, No. 221, Jan. T., 1921, by defendants, from decree of C. P. No. 1, Phila. Co., Sept. T., 1919, No. 2379, on bill in equity, in case of Joseph Stryjewski et al. v. John B. Panfil et al. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for mandatory injunction for possession of church property, etc. Before PATTERSON, J.

The opinion of the Supreme Court states the facts.

The court entered a decree awarding injunction in accordance with the prayers of the bill. Defendants appealed.

*Error assigned,* inter alia, was decree, quoting it.

*James Wilson Bayard,* of *Prichard, Saul, Bayard & Evans,* for appellants.

*William H. Peace,* with him *Frank H. Warner,* for appellees.

OPINION BY MR. JUSTICE WALLING, March 7, 1921:

St. Valentine's Polish Catholic Church was established in 1910, at Frankford, Philadelphia, as an independent Catholic church. It has a church building, including a school room and rectory, and a membership in good standing of about ninety. The services are conducted in the Polish language, and Rev. John B. Panfil was called to the pastorate of this church in the fall of 1918. He had formerly been a Roman Catholic priest, but in 1917 became a rector of the Protestant Episcopal Church, under the direction of Bishop Rhinelander. Friction soon developed between Rev. Panfil and his parishioners, mainly on account of his being a protestant, and in May, 1919, a large majority of the members requested his resignation; some later withdrew their names from the request, but the ill feeling continued. The church is unincorporated but its constitution provides, inter alia, that "all of the members of the parish can discharge on a special meeting their parish priest if he does not abide according to the rules of this constitution and also does not labor for the benefit of the parish. On the same meeting all of the members of the parish can choose a new priest and appoint a salary for him." On Sunday, July 20, 1919, public notice was given from the pulpit of a special meeting to be held on Wednesday evening, July 23d, to vote upon the question of the discharge of Rev. Panfil as priest, and therein all the parishioners were ordered to attend. A like notice was sent to each member. Practically the entire membership came to the meeting, including those for and those against the priest. It was an acrimonious session, during which the following resolutions were adopted, viz: "Resolved: That the sense of the membership of this parish be determined by a vote, on the three following questions:

"That it is our desire and intention that the form of religious teaching and worship for this parish shall be Polish Catholic.

"That it is the desire of the members of this parish, not to be connected with the Protestant Episcopal Church, and not to be under the jurisdiction of Bishop Philip Rhinelander, and that whatever relation or connection there has been or may have been either with the Protestant Episcopal Church and Bishop Rhinelander, the same be now severed.

"That as Father John B. Panfil, the parish priest, the appointee by Bishop Rhinelander, is not a Polish Catholic priest, that he be, and is now dismissed as the priest of this parish, and that if the foregoing resolutions are adopted, that the chairman appoint a committee of three to carry the same into effect and to inform Father Panfil thereof, and also Bishop Rhinelander, with further authority to secure the services of a Polish Catholic priest for this church and congregation."

Some left the room early in the evening so that but fifty-three were present when the vote was taken and of those forty voted for and two against the resolutions, and the others failed to vote. Many of those who had gone were of the Panfil faction. The church constitution is silent on the question of a quorum.

There was boisterous talk and some disorderly conduct at the meeting, in which both factions participated, but as the trial court, in effect, finds, nothing occurred to prevent any member from remaining or voting upon the resolutions. The action taken at the meeting was ratified by the official board and Rev. Panfil was notified of his discharge and requested to vacate the premises, which he refused to do. On the contrary he and his friends continued in possession by strong hand, to the exclusion of the opposition. Thereupon a large number of the church members filed this bill against Mr. Panfil and certain of his adherents, to enforce the will of the congregation as expressed at the meeting. The case was heard upon bill, answer, replication and testimony; from which the trial court found the facts, somewhat more at large than above stated; and, after overruling

defendants' exceptions, entered a final decree granting the relief prayed for; hence, this appeal by defendants.

The decree was rightly entered. The language above quoted from the church constitution, that "all of the members of the parish" can choose or discharge a priest, signifies that such action must be had by the congregation at large and not by the official board, or by any other body less than the membership, and that all shall have opportunity to participate—not that all must attend the meeting, or every one vote in the affirmative. See Duessell et al. v. Proch et al., 78 Conn. 343. To so hold would practically prevent all action as it would rarely happen that every member of the church could or would attend, or that all would be of one mind. Were that necessary no priest could be discharged so long as he had one friend in the church.

The meeting was largely attended and more than one-half of the entire membership remained when the resolutions were acted upon; so there is no question as to the presence of a quorum. That being so, the result is determined by the votes cast (see 15 Cyc. 388; Craig v. First Presbyterian Church, 88 Pa. 42), whether the same be more or less than a majority of the entire membership. In any event, a meeting properly constituted cannot be deprived of the right to transact the business for which it was called by the refusal of certain members present to participate therein or by their capricious withdrawal therefrom: Com. ex rel. v. Vandegrift, 232 Pa. 53; Lutz v. Webster, 249 Pa. 226; Thompson on Corporations (2d ed.), sec. 910.

The vice of defendants' contention, that the proceedings at the meeting were vitiated by reason of violence, is that the court below found the facts upon that question against them, and there is evidence to support the findings. The case is analogous to an ordinary election where "a slight disturbance, although it may alarm a few of the timid, is not sufficient to set aside an election. To do so it must clearly appear that there was such a dis-

play of force as ought to have intimidated men of ordinary firmness": McCrary on Elections (4th ed.), sec. 550. To like import is Paine on Elections, sec. 467. In the case at bar ample opportunity was given all to participate and none was prevented from voting.

Section 21 of the church constitution provides, "In case some misunderstanding takes place between the members, they should not appeal to the public court, but all the cases should be tried by parish peace court, which is composed of six parishioners, three for each side, with the parish priest. If the verdict of peace court does not suit them, then they can go to the public court"; and the question was suggested at bar as to whether appellees should have sought that tribunal before filing this bill. We are not prepared to hold this such a misunderstanding as that provision contemplates. Moreover, the peace court could not properly function without a priest, and the court below held, and we hold, the church has had no priest since July, 1919. Surely Panfil could not sit in judgment on his own case.

The decree is affirmed and appeal dismissed at the costs of appellants.