373 A.2d 1096

Lawrence R. STOLTZ, Honorable James H. J. Tate, Honorable Joseph Tracy and Harold E. Kohn, Appellees,

v.

James C. McCONNON, William R. Eaton and Joseph T. Mack, Appellants.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant, and Lawrence H. Baberick, Bernard L. McDevitt, Thomas C. Ottey, Edward J. Roach, William C. Schuster, William E. Shirley, Charles F. Toewe, Francis G. Warburton and Main LaFrentz & Co., t/a Main LaFrentz & Co.

v.

Harold E. KOHN.

Supreme Court of Pennsylvania.

Argued Jan. 17, 1977.

Decided June 3, 1977.

158

Drinker, Biddle & Reath, Lewis H. Van Dusen, Jr., Edward M. Posner, Timothy C. Russell, Philadelphia, for appellants.

160

Kohn, Savett, Marion & Graf, Harold E. Kohn, Robert A. Swift, Philadelphia, for appellees.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

EAGEN, Chief Justice.

The Southeastern Pennsylvania Transportation Authority [SEPTA] was created pursuant to the Metropolitan Transportation Authorities Act of 1963 [MTAA], Act of August 14, 1963, P.L. 984, § 1 *et seq.*, 66 P.S. § 2001 *et seq.* (Supp.1976–77), in order to establish, develop, and maintain an integrated mass transportation system for the Philadelphia metropolitan area. The authority is governed and administered by a 11-member transportation board consisting of two appointed representatives of the City of Philadelphia, two appointed representatives of each of four suburban counties—Bucks, Chester, Delaware, and Montgomery—and one representative appointed by the Governor of Pennsylvania. See sections 15 and 16 of MTAA, 66 P.S. §§ 2015, 2016 (Supp.1976–77). These consolidated actions arose out of a continuing dispute among members of the SEPTA board and raise a single question, the number of affirmative votes necessary to enable the board to adopt resolutions and thus validly transact the business of the authority.

At issue is the construction of section 18(a) of MTAA, 66 P.S. § 2018(a) (Supp.1976–77), which provides in its entirety:

"Regular meetings of the board shall be held in the metropolitan area at least once in each calendar month except July or August, the time and place of such meetings to be fixed by the board. A majority of the board shall constitute a quorum for the transaction of business. *All action of the board shall be by resolu-*

*tion and the affirmative vote of a majority of all the members shall be necessary for the adoption of any resolution*: Provided, however, That no action by the board to which an express objection has been made, pursuant to this section, by a board member or members representing a county or counties having one-third or more of the population of the metropolitan area, as determined by the most recent decennial census, shall be carried unless supported at a subsequent regular meeting of the board by the votes of at least three-quarters of the membership of the board. In case of disagreement between members representing the same county, each member shall be deemed to represent one-half of the population of that county." [Emphasis added.]

The underlying facts are undisputed.

During a meeting of the board held on November 27, 1974, two budgetary resolutions were moved, and the vote on each was five yes, four no, and one abstaining, with one absent. Over the objections of Harold E. Kohn, Esq., the Governor's appointee, the chairman, James C. McConnon, declared the resolutions carried. During a meeting of the board held on December 18, 1974, resolutions were moved which would have authorized the payment of certain legal fees, authorized an accounting firm to make certain audits, and authorized the general manager of SEPTA to submit applications for certain federal grants. The vote on each resolution was five yes and four no with two absent, having left the meeting earlier. Again, over Mr. Kohn's objections, the chairman declared the resolutions carried.

On December 30, 1974, Mr. Kohn, together with three other members of the board, filed a complaint in equity in the Court of Common Pleas of Philadelphia against chairman McConnon, the general manager, and the controller and treasurer of SEPTA asking that the defendants be enjoined from carrying out the challenged resolu-

tions and disbursing any monies in connection with them and from spending any SEPTA funds in defense of the suit, that the resolutions be declared null and void, and that damages be paid SEPTA as compensation for the defendants' allegedly unlawful acts. On December 31, 1974, SEPTA, together with the partners in the accounting firm authorized to perform audits for SEPTA in one of the challenged resolutions of December 18, filed a petition for declaratory judgment in the Commonwealth Court against Mr. Kohn seeking that the court declare five affirmative votes out of nine cast sufficient to carry a resolution. On January 21, 1975, the court of common pleas sustained the preliminary objections of the defendants in the equity action and held it lacked jurisdiction to entertain the suit. An appeal from this decree was subsequently taken to this Court, and we transferred it to the Commonwealth Court. On February 24, 1975, a new complaint in equity, similar to the one previously filed in the court of common pleas,[1] was also filed in the Commonwealth Court. On April 28, 1975, the Commonwealth Court ruled that original jurisdiction of all three actions, the two equity suits and the petition for declaratory judgment, belonged in the Court of Common Pleas of Philadelphia and transferred them there. *Southeastern Pennsylvania Transportation Authority v. Kohn,* 18 Cmwlth. 546, 336 A.2d 904 (1975).

The three actions were then consolidated in the court of common pleas, and on July 24, 1975, the chancellor filed an opinion and decree nisi in which he ruled that an affirmative majority of those present at a given meeting at which there is a quorum is necessary to pass a resolution, that those members who abstain from voting, including those who withdraw from the meeting before the vote is taken, must be counted as negative votes, and that

1. This complaint in addition challenged a subsequent resolution approving the payment of legal fees which the chairman had declared adopted on a 5–4 vote at a January 22 meeting of the board.

none of the challenged resolutions, therefore, had been validly adopted. He concluded, however, that the challenged budgetary resolutions of November 27 had been subsequently ratified by votes of 7–4. He dismissed the allegations of malfeasance and refused to award damages, but he enjoined implementation of the resolutions of December 18 and January 22. Exceptions by the defendants to the decree nisi were sustained by a majority of the court en banc, which held that abstentions should not be counted as either affirmative or negative votes so that the resolutions which received a 5–4 vote were validly adopted. On direct appeal from the final decree the Commonwealth Court reversed in part, holding that at least six affirmative votes, a majority of the entire board, were necessary to adopt a resolution and that abstentions were therefore irrelevant; it thus enjoined the implementation of the resolutions of December 18 and January 22, but it agreed with the trial court that the November 27 resolutions had been validly ratified. Judge Wilkinson, joined by President Judge Bowman, filed a concurring and dissenting opinion expressing essential agreement with the trial court en banc. *Stoltz v. McConnon*, 26 Pa.Cmwlth. 82, 362 A.2d 1121 (1976). A petition for allowance of appeal to this Court was denied, but an application for reconsideration was granted and the appeal allowed. We now affirm.

Appellants, defendants in the equity actions and plaintiff in the declaratory-judgment action in the trial court, argue that the language of section 18(a) of MTAA, which states "[a]ll action of the board shall be by resolution and the affirmative vote of a majority of all the members shall be necessary for the adoption of any resolution," does not manifest an unmistakable legislative intent to abrogate the general common-law rule that "a majority of those voting, in the presence of a quorum, can act for a board or other body," while appellees maintain that this statutory language clearly requires a mini-

mum of six affirmative votes, a majority of all the members of the board, to enact a resolution.[2] We agree with appellees.

■ ■ It is true that Pennsylvania courts have repeatedly applied the common-law rule to representative municipal bodies of limited membership in the absence of *any* language to the contrary in the relevant enabling statute. See *Raynovich v. Romanus,* 450 Pa. 391, 299 A. 2d 301 (1973); *Meixell v. Hellertown Borough Council,* 370 Pa. 420, 88 A.2d 594 (1952); *Commonwealth ex rel. Fortney v. Wozney,* 326 Pa. 494, 192 A. 648 (1937); *Frackville Borough Council Case,* 308 Pa. 579, 162 A. 835 (1932); *Commonwealth v. Fleming,* 23 Pa.Super. 404 (1903). Further, in cases not involving votes by representative bodies of strictly limited membership but general public elections, this Court has held that, in the absence of *clear* legislative language to the contrary, where the applicable statute provides for a vote to be decided by a majority of the electorate, all that is required is a majority of those actually voting on the question as long as the election is available to all qualified voters; absentees and abstainers are thus regarded as assenting to the will of the majority of those actually voting. See *Heuchert v. State Harness Racing Commission,* 403 Pa. 440, 450, 170 A.2d 332, 337 (1961); *Munce v. O'Hara,* 340 Pa. 209, 211, 16 A.2d 532, 533 (1940). A comparable rule has been applied to elections open to the entire membership of a church or religious institution. See *Stryjewski v. Panfil,* 269 Pa. 568, 112 A. 764 (1921); *Schlicter v. Keiter,* 156 Pa. 119, 27 A. 45 (1893); *Craig v. First Presbyterian Church,* 88 Pa. 42 (1879).[3] There can be no ques-

**2.** Appellees do not here contest the rulings of both the court of common pleas and the Commonwealth Court that the resolutions of November 27 were subsequently validly ratified by a 7–4 vote, and that there was no liability for the alleged malfeasance or misfeasance in office.

**3.** In *Craig,* supra, this Court distinguished "a corporate act to be done by a definite number of persons" from "one to be per-

tion, however, that the legislature in enacting MTAA had the power to abrogate the common-law rule with regard to it; appellants, rather, argue that the legislature failed to do so, and that a majority of all the members thus means a majority of all members of a quorum present and voting. Resolution of the issue, therefore, depends on the statutory language itself.[4]

■■ In our view, the statutory requirement that "the *affirmative* vote of a majority of *all* the members shall be necessary for the adoption of any resolution" (emphasis added) reflects a clear legislative intent to abrogate the common-law rule with regard to MTAA, so that instantly a minimum of six affirmative votes was necessary to adopt the challenged resolutions. We thus agree with the majority of the Commonwealth Court that *Ross v. Miller*, 115 N.J.L. 61, 178 A. 771, 772 (1935), in which it was held that a New Jersey statute providing " '[a] majority of all the members of the municipal council shall constitute a quorum, and the affirmative vote of a majority of all the members shall be necessary to take any action or pass any measure . . .' " modified the common-law rule, is a more pertinent

formed by an indefinite number" and indicated that in the former case a quorum, consisting of at least a majority of the total number, is necessary. 88 Pa. at 47.

4. Appellants rely heavily on *Federal Trade Commission v. Flotill Products, Inc.,* 389 U.S. 179, 88 S.Ct. 401, 19 L.Ed.2d 398 (1967), for the proposition that the common-law rule requiring only a majority of a quorum consisting of a simple majority of a collective body controls "in the absence of a clear, explicit statutory provision to the contrary." We find no such language in *Flotill.* Rather, the Supreme Court of the United States there held that "the FTC is not *inhibited from* following the common-law rule unless Congress has *declared otherwise.*" [Emphasis added.] 389 U.S. at 185, 88 S.Ct. at 405. Far from holding that such a contrary declaration must be explicit, the Court immediately went on to determine whether it was there implicit. Particularly in view of section 1928 of the Pennsylvania Statutory Construction Act, 1 Pa.C.S.A. § 1928, which indicates "the rule that statutes in derogation of the common law are to be strictly construed" has no application instantly, we similarly have undertaken our construction of section 18(a) of MTAA without presumption with regard to the common-law rule.

precedent than the Pennsylvania cases cited by appellants in which the common-law rule was held applicable in the absence of legislative language to the contrary.[5] See and compare *Putney v. Abington Twp.*, 176 Pa.Super. 463, 476, 108 A.2d 134, 140–141 (1954).

■ ■ Appellants, however, argue that the pertinent language of section 18(a) does not express a legislative intent to require a majority of the entire membership of the SEPTA board as clearly and unmistakably as it is expressed elsewhere in the act. They point to section 4(b)—66 P.S. 2004(b)—in which it is stated that "upon the receipt of initial certifications and respective oaths of a majority of the total number of board members appropriate to any metropolitan area, the Secretary of the Commonwealth shall issue a certificate of incorporation." Similarly, Judge Wilkinson in his concurring and dissenting opinion in the Commonwealth Court observed that the subsequent language in section 18(a) dealing with the number of votes necessary to override a veto speaks of "the votes of at least three-quarters of the membership of the board." Although these examples suggest to us that the legislature did not use identical phraseology throughout MTAA to denote the full membership of the board, we are not persuaded that "all action *of the board* shall be by resolution and the affirmative vote of a majority of *all the members* shall be necessary for the adoption of any resolution" (emphasis added) expresses the idea with less certainty.[6] Even assum-

---

5. The *Ross* holding was despite the rule applicable in New Jersey at the time that a statute in derogation of the common law must be strictly construed. Indeed, the *Ross* court went on to state the converse of appellants' position instantly: "We are required to assume that if the Legislature had in mind the common-law rule . . . it would have chosen appropriate and unambiguous language to express that intent." 115 N.J.L. at 64, 178 A. at 773.

6. We note, in addition, that SEPTA's by-law 3.07, adopted prior to the present litigation, interprets this language as follows:
 "Except as otherwise provided in Section 18(a) of the Metropolitan Transportation Authorities Act of 1963, all action of the

ing that this language is less certain, however, we find it more susceptible to appellees' construction than appellants'.[7] Cf. *Munce v. O'Hara,* supra. We agree with the majority opinion of Judge Rogers in the Commonwealth Court that appellees' construction is also consistent with the legislative intent evinced in the veto provision of section 18(a) to balance and accommodate the diverse interests of the various counties participating in the authority and to assure that authority action have a broad base of affirmative support.[8] We thus agree also that the status of the abstaining members was irrelevant, since abstentions clearly cannot be counted as affirmative votes, even if they are regarded as acquiescence in the will of the majority.

 Finally, appellants argue that the language in section 18(a) providing for a quorum of six members would be superfluous if it were correct to construe the act as requiring a minimum of six votes to adopt a resolution. Since, however, the quorum might have been set

Board shall be by resolution and *the affirmative vote of a majority of all the members of the Board* shall be necessary for the adoption of any resolution." [Emphasis added.]

7. Conversely, appellees cite the following statutory language from the same legislative session in which MTAA was enacted as an example of the legislature's ability to use clear language *codifying* the common-law rule when such was its intention:
"Six directors attending shall constitute a quorum for the transaction of any business and, unless a greater number is required by the by-laws of the agency, the act of a majority of the directors present at any meeting shall be deemed the act of the board."
Pennsylvania Higher Education Assistance Agency Act of 1963, Act of August 7, 1963, P.L. 549, § 3(b), *as amended,* 24 P.S. § 5103(b) (Supp.1976–77).

8. The opinion of Judge Rogers indicated that, pursuant to section 18(a), the three-quarters vote of the membership necessary to override a veto is eight votes. Appellants urge that the correct number of votes necessary is nine. We observe that three-quarters of eleven is 8.25, but the question of the number of members necessary to override a veto is not properly before us, and we thus express no view as to whether the number necessary is eight or nine.

at a number greater than a majority of the membership to assure a broader participation in the meetings even though only six votes, given a quorum, would be necessary to adopt a resolution, we are not persuaded that the language establishing a quorum of six must be regarded as surplusage.

Accordingly, the order of the Commonwealth Court is affirmed. Costs to be paid by Southeastern Pennsylvania Transportation Authority.

JONES, former C. J., took no part in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

POMEROY, J., filed a dissenting opinion.

ROBERTS, Justice.

I agree with the majority that the affirmative votes of six members of the board of the Southeastern Pennsylvania Transportation Authority are necessary for the adoption of any resolution, and I join in the majority opinion. I write only to suggest an additional reason why this interpretation of section 18(a) of the Metropolitan Transportation Authorities Act of 1963 [1] does not render surplusage the provision that a majority of the board shall constitute a quorum.[2]

Adoption of resolutions is not the only action by the board or proceeding before the board which requires a quorum. For example, section 18(a) further provides: "[r]egular meetings of the board shall be held in the metropolitan area at least once in each calendar month except July or August . . . ." If a quorum is present, a regular meeting may be held, even though no resolution receives six affirmative votes. Thus the requirement

1. Act of August 14, 1963, P.L. 984, § 18(a), 66 P.S. § 2018(a) (Supp.1976).
2. Id.

that a resolution receive six affirmative votes to be adopted does not deprive the quorum provision of independent significance.

POMEROY, Justice, dissenting.

I dissent for the reasons set forth in the opinion of Judge Wilkinson in the Commonwealth Court. *Stoltz v. McConnon*, 26 Pa.Cmwlth. 82, 362 A.2d 1121 (1976) (concurring and dissenting opinion of Wilkinson, J., joined by Bowman, P. J.).