406 A.2d 520

R. Henry DiGIACINTO, Appellant,

v.

CITY OF ALLENTOWN, Pennsylvania, and Alton W. Frey, Jr., Appellees.

Supreme Court of Pennsylvania.

Argued April 17, 1979.

Decided Oct. 1, 1979.

438

James C. Lanshe, Jr., Allentown, for appellant.

Daniel K. McCarthy, Asst. City Sol., William C. Wickkiser, Allentown, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

The question in this appeal is whether the appellant, R. Henry DiGiacinto, is entitled to be certified as an elected member of the City Council of the City of Allentown.

The underlying facts are not in dispute. On September 30, 1978, a vacancy was created on the Allentown City Council when one of its members resigned. Two weeks later, on October 16, 1978, the remaining six members of the seven member council convened to elect a person to the vacancy. Appellant was nominated for the vacancy. A resolution proposing appellant as a member of city council was voted upon with three votes for appellant, two against him, and one abstention. One of the appellees, Alton W. Frey, as the president of city council, refused to certify that appellant had been elected. Frey ruled that, four affirmative votes, a majority of the total membership of city council, were necessary for election—not three votes.

On October 25, 1978, appellant filed a mandamus action against appellee Frey and appellee, the City of Allentown, in the Court of Common Pleas, Lehigh County, seeking certification of the election results. Preliminary objections were filed by appellees in the form of a demurrer. The trial court sustained appellees' preliminary objections and dismissed

appellant's complaint for mandamus. This direct appeal followed. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202(2).

In determining the number of votes necessary for a deliberative body to take official action, Pennsylvania follows the common law rule. *Stoltz v. McConnon,* 473 Pa. 157, 373 A.2d 1096 (1977); *Munce v. O'Hara,* 340 Pa. 209, 16 A.2d 532 (1940); *see also Commonwealth of Pennsylvania ex rel. Zimmerman v. Kleiman,* 485 Pa. 421, 402 A.2d 1343 (1979); *Federal Trade Commission v. Flotill Products,* 389 U.S. 179, 88 S.Ct. 401, 19 L.Ed.2d 398 (1967).

Under the common law rule so long as a quorum is present at a meeting, all that is required is that the highest vote be equal to a majority of the quorum number, even though the highest vote constitutes only a plurality of all the legal votes cast. This is true even if more than the quorum number is present at the meeting. For example, if there are seven members of a body and four of those members constitute a quorum and attend a meeting, a majority of the four, which would be three, is necessary to take official action of any kind. Even if all seven members, more than the necessary quorum of four, attend the meeting, the same number of votes, namely three, is all that is necessary to take official action if that is the highest number of votes cast (plurality) in a given matter. Thus, if the minimum quorum of four is present, and the vote on a particular proposal is 3 in favor and 1 against, the proposal is adopted. If all seven members of the body attend and the vote on a particular proposal is 3 in favor, 1 against and 3 abstentions, the proposal is likewise adopted by the plurality vote. Cf. *United States v. Ballin,* 144 U.S. 1, 12 S.Ct. 507, 36 L.Ed. 321 (1892) (statute lawfully enacted where vote in House of Representatives was 138 yeas, 0 nays, and 189 not voting). Under this common law rule, in a seven-person body, the highest number of votes necessary to take official action is not dependent upon the fortuity of whether 4, 5, 6, or 7 members choose to attend the meeting so long as the minimum quorum number is present. If the rule were otherwise, a member could attend

the meeting and abstain from voting and have a different effect than if that person were absent from the meeting. The common law rule does not permit a member to attend and abstain from voting and yet demand that the highest number of votes required to take official action be more than if that member had been absent. This Court has previously observed that a member who attends a meeting and abstains can have the same paralytic effect as one who is absent:

> "[O]ne or a relatively few persons could, by their intentional absence from, or by their presence at a meeting and their failure to vote, or their casting a blank or illegal ballot, block indefinitely an important election or important legislation and thus paralyze government with obviously great harm to the public interest."

Meixell v. Borough Council of Borough of Hellertown, 370 Pa. 420, 425, 88 A.2d 594, 596.

The regular quorum requirement which has been established by the legislature is four of the seven members, a majority of the whole number of members of council. See 53 P.S. § 41607(a). Since six members were present at the meeting more than the quorum number attended. Three voted for the appellant, two voted against the appellant, and one member abstained. Appellant received the highest number of votes cast (plurality) and the number he received was equal to the majority vote of the quorum number which is three since the quorum is four. Thus, under the common law rule appellant was duly elected as a member of city council.

Appellees point out, however, that the common law rule can be altered by statute and contend that the legislature has abrogated the common law rule as to the matter before us by its enactment of 53 P.S. § 41406(a) (Supp.1978–1979) of the Optional Third Class City Law. Although we agree with the appellees that the common law rule can be abrogated by statute, Stoltz v. McConnon, 473 Pa. 157, 373 A.2d 1096 (1977), we do not agree with the appellees that that was done in the section of the law relied on. 53 P.S.

§ 41406(a) (Supp.1978–1979) of the Optional Third Class City Charter Law provides as follows:

"§ 41406.   Vacancies

(a) If a vacancy exists in the city council, the city council shall, by a majority of its remaining members, fill such vacancy, within thirty days thereafter, by electing a qualified person to serve until that first Monday of January when his successor who shall have been elected by the qualified electors at the next municipal election, occurring at least thirty days after such vacancy exists, is duly sworn into office for the remainder of the term of the person originally elected to said office.

In case vacancies should exist whereby the offices of a majority or more members of the city council become vacant, the remaining members shall fill such vacancies, one at a time, giving each new appointee such reasonable notice of his appointment as will enable him to meet and act with the then qualified member or members of the city council in making further appointments until a bare majority of members of city council have been qualified, whereupon the said members shall fill the remaining vacancies at a meeting attended by the said majority members of city council, such appointees to receive a majority of the votes of the members present at any such meeting.   The person or persons selected to fill such vacancy or vacancies shall hold their offices as herein provided.

If, by reason of a tie vote, or otherwise, such vacancy shall not have been filled by the remaining members of city council within the time as limited herein, the court of common pleas, upon the petition of ten or more qualified electors, shall fill such vacancy by the appointment of a qualified person, for the portion of the unexpired term as above provided.

If, at any time, vacancies should occur or exist in the membership of all members of city council, the court of common pleas shall appoint a city council, of persons properly qualified, who shall serve as herein provided."

■    Appellees contend that the first paragraph of the above section requires the affirmative vote of four of all the remaining members of council since the section provides that "a majority of [the] remaining members" shall fill the vacancy. We do not agree. In addition to the language *"fill such vacancy"* there appears the language *"by electing a qualified person."* If the legislature intended that the words *"majority of its remaining members"* shall *"fill such vacancy"* to mean the number of votes required rather than a reference to the collective group which has the authority to fill the vacancy, there would have been no need to add the words *"by electing a qualified person."* Read in context, the reference to *a majority of the remaining members* appears to be a quorum requirement. At least a majority of the remaining members must be in attendance for a quorum to conduct business.

This interpretation is buttressed by the legislative intent manifested in the second paragraph of the section. The first paragraph is applicable when the total number of vacancies is less than a majority of the total membership of council. The second paragraph applies when vacancies exist in the offices of a majority or more of the members. In the second paragraph when there remains only one, two, or three members of council, vacancies are filled in a specified manner "until a bare majority of the members of council have been qualified," which is four members. The paragraph then states that the four members must be present at the meeting to fill the. remaining three vacancies but significantly only a majority of the four members, which would be three, is necessary to fill the remaining three vacancies.

To accept the appellees' interpretation of the first paragraph would mean that if four members of council who had been elected by the people remained on council they would have to vote unanimously before any vacancy could be filled. Yet, under the second paragraph if there were four members of council some of whom had not been elected by the people but rather appointed to fill vacancies, they would not have to vote unanimously to fill other vacancies. We can

perceive of no reason to justify such a different result under paragraph one and paragraph two.

Moreover, when it intended to abrogate the common law rule in another section of the Third Class City Charter Law, the legislature chose language leaving no doubt of its intention. In section 41607(a) of that law, which is also applicable to the city council of the City of Allentown, the legislature spoke as follows:

"(a) Council shall determine its own rules of procedure, not inconsistent with ordinance or statute. A majority of the whole number of members of the council shall constitute a quorum, but no ordinance shall be adopted by the council without *the affirmative vote of a majority of all members of the council.*"

The explicit language used in the above section by the legislature to indicate its intention to abrogate the common law rule significantly does not appear in section 41406(a). *See also Stoltz v. McConnon,* 473 Pa. 157, 373 A.2d 1096 (1977).

The trial court held that our decision in *Stoltz v. McConnon, supra,* was controlling and required that appellant receive "four affirmative votes" in order to be elected to city council. Because appellant received only three "affirmative" votes, the trial court reasoned that under *Stoltz, supra,* the vote was insufficient to elect appellant to city council.

We do not agree that the matter before us is controlled by *Stoltz.* In *Stoltz, supra,* the statutory language required that "the *affirmative* vote of a majority of *all* the members shall be necessary for the adoption of any resolution." (Emphasis in original.) We held that that language abrogated the common law rule. The language of the statute before us is not identical to the language considered in *Stoltz.* The language we are called upon to interpret in § 41406(a) makes no reference to the "affirmative vote of a majority of all the members" although, as we have noted, that language is found in section 41607(a) of the Optional Third Class City Charter Law, which is not applicable to the matter before us.

444

Since we agree with the appellant that the common law rule was not abrogated by the legislature and he was duly elected as a councilman, we need not address appellant's other arguments.

The order of the trial court is reversed and remanded with instructions to issue a writ of mandamus to appellee for appellant's certification as a duly elected member of city council.