454 A.2d 531

**COMMONWEALTH of Pennsylvania, ex rel. Mario BAGNONI, Councilman of the City of Erie, on His Own Behalf and on Behalf of All Property Owners of the City of Erie,**

v.

**James E. KLEMM, City Clerk, the City of Erie and Mayor Louis J. Tullio, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1982.

Decided Dec. 31, 1982.

Lawrence L. Kinter, Deputy City Sol., Erie, for appellant.
George M. Schroeck, Erie, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

HUTCHINSON, Justice.

Resolution of this case turns solely upon a question of statutory construction: *viz.* whether an Act of Assembly which requires "a vote of two-thirds of the members" to override the Mayor's veto means two-thirds of the entire body or two-thirds of the members present. We hold that in the context of section 413(a) the Optional Third Class City Charter Law (Article IV, Mayor-Council Plan A), Act of July

15, 1957, P.L. 901, *as amended*, 53 P.S. § 41413(a), the quoted expression means two-thirds of the entire body. We therefore reverse the Commonwealth Court, 61 Pa.Cmwlth. 227, 433 A.2d 583, which had held that affirmative votes by four of the six councilmen present out of a seven member council were enough to override the mayor's veto.

On June 14, 1978, the City Council of Erie passed an ordinance providing for the City's sewer rental rates to remain unchanged until December 31, 1978. Mayor Louis J. Tullio vetoed this ordinance. Pursuant to section 413(a) of the Optional Third Class City Charter Law, a council member introduced a resolution before the Council proposing to override the Mayor's veto. Four members of the Council voted in favor of overriding the veto, two members voted against the resolution, and one member was absent.[1] The City Solicitor ruled at the meeting that this vote was insufficient to constitute an override of the veto by "two-thirds of the members of Council" within the meaning of section 413(a).

On August 14, 1978, appellee, Councilman Mario Bagnoni, filed a petition for a writ of mandamus and declaratory judgment in the Court of Common Pleas of Erie County, requesting that the court order the City Clerk to enter in the official city journal that the veto of the Mayor was overriden. The Court of Common Pleas denied the petition holding that there is no modifying language in section 413(a) to indicate that "members" means only those who are present at the meeting. The Commonwealth Court reversed and this appeal followed.[2]

1. Under the Optional Third Class City Charter Law, the Erie Council consists of seven members. *See* 53 P.S. 41404 and 41213.

2. On October 25, 1978, after the Common Pleas Court's Order in this action, the City Council reconsidered the override resolution in the presence of a full seven member council. The resolution failed by a vote of four to three. The question here is whether a four to two vote taken by council overrode the Mayor's veto under section 413(a). That question is not mooted by a subsequent vote of council which undisputedly failed to override the Mayor's veto. If we determine that the first vote successfully overrode the veto, then the

This Court has applied the common law rule that a majority of those voting in the presence of a quorum can act for a board or other body "in the absence of *any* language to the contrary in the relevant enabling statute." *Stoltz v. McConnon,* 473 Pa. 157, 373 A.2d 1096 (1977) (citing *Raynovich v. Romanus,* 450 Pa. 391, 299 A.2d 301 (1973)) (emphasis in original); *Meixell v. Hellertown Borough Council,* 370 Pa. 420, 88 A.2d 594 (1952); *Commonwealth ex rel. Fortney v. Wozney,* 326 Pa. 494, 192 A. 648 (1937); *Frackville Borough Council Case,* 308 Pa. 579, 162 A. 835 (1932). However, in the same context of voting requirements in representative municipal bodies this Court has rejected the necessity of a clear and explicit statutory provision to demonstrate a legislative intent to change the common law rule and require a majority of the full body. The Pennsylvania Statutory Construction Act, 1 Pa. C.S. § 1928(a), provides that the "rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937." Applying the above this Court has held that it will construe statutes dealing with the number of votes required for action by a municipal body without any presumption in favor of the common law rule. *Stoltz v. McConnon,* 473 Pa. at 165 n. 4, 373 A.2d at 1099–1100 n. 4.

In cases not involving votes by representative bodies of strictly limited membership, *e.g.* general public elections or elections open to the entire membership of a church or religious institution, this Court has applied the common law rule more rigorously:

'[T]he great weight of authority holds that where a statute provides for a vote of "a majority of the voters", "a majority of the legal voters," "a majority of the qualified voters", etc., all that is required is a majority of those actually voting, unless a contrary legislative intention and purpose is very clearly expressed.'

*Heuchert v. State Harness Racing Comm.,* 403 Pa. 440, 450, 170 A.2d 332, 338 (1961) (quoting *Munce v. O'Hara,* 340 Pa.

subsequent vote is meaningless. Therefore, the Commonwealth Court correctly rejected appellant's mootness argument.

209, 211, 16 A.2d 532, 533 (1940)) (emphasis added). *See also Stryjewski v. Panfil,* 269 Pa. 568, 112 A. 764 (1921). *Schlichter v. Keiter,* 156 Pa. 119, 27 A. 45 (1893).

The reasons are manifest for a more stringent application of the common law rule to general elections. First, as the older cases stressed, there is an inability to determine the number of electors as distinguished from voters. A second and more compelling reason is that there is no way to compel people to vote. Particularly in primaries where less than fifty percent of the registered voters participate, a requirement of a majority of *all* voters would, for all practical purposes, cause institutional paralysis. *See Heuchert v. State Harness Racing Comm., supra.*

With this background we consider section 413(a) of the Optional Third Class City Charter Law to ascertain whether the legislature intended that the required number of votes be computed as a portion of the entire membership or only of those members present. Section 413(a) provides:

> No ordinance or any item or part thereof shall take effect without the mayor's approval . . . unless council upon reconsideration, thereof, . . . shall by a vote of two-thirds of the members resolve to override the mayor's veto.

53 P.S. § 41413(a).[3] The meaning of the phrase in question, "by a vote of two-thirds of the members", is unclear. This Court has never considered the meaning of this phrase.[4]

The appellees' and Commonwealth Court's reliance on the fact that the legislature is familiar with more specific lan-

3. Prior to the enactment of the Optional Third Class City Charter Law, the legislature made no provision for a veto of council's actions by the mayor. An affirmative vote of three of the five council members in third class cities was required to pass any ordinance, resolution, rule or regulation. Act of June 23, 1931, P.L. 932, art. X, § 1007, as amended, 53 P.S. § 36007.

4. *DiGiacinto v. City of Allentown,* 486 Pa. 436, 406 A.2d 520 (1979) a case which appellees regard as controlling, sheds no light on our present inquiry. In *DiGiacinto* this Court considered the meaning of section 406 of the Optional Third Class City Law which provides that "if a vacancy exists on City Council, the City Council *shall by a majority of its remaining members* fill such a vacancy." 53 P.S. § 41406(a) (emphasis added). This Court concluded that this lan-

guage to indicate that the percentage of votes required to override the mayor's veto is the specified fraction of the entire elected body rather than the number of members present at a particular meeting is misplaced. The legislature has also shown that it knows how to use specific language for the common law rule. Thus, one example cancels the other in the absence of a presumption favoring either. Examples of specific language requiring a majority of the full body are:

> No bill shall become an ordinance unless a majority of all the councilmen elected be recorded as voting in its favor . . . If [the mayor] disapproves it, he shall return it to council, and council pass (sic) the same, . . . *by vote of three-fifths of all the members elected thereto,* it shall become law without his approval.

53 P.S. § 12526 (First Class City Code) (emphasis added). The Second Class City Code provides:

> "If, upon reconsideration, council shall pass the ordinance or resolution over the veto of the mayor, by a two-thirds vote of *all the members thereof,* it shall be a binding ordinance or resolution of the city."

53 P.S. § 22230 (emphasis added). The Borough Code provides:

> If, after such reconsideration, two-thirds of *all the members elected to said council,* or a majority of council plus one, when the number composing such council is less than nine, shall vote to pass such ordinance or resolution, it shall become of as (sic) full force and effect. . . .

53 P.S. § 46007 (emphasis added).

Finally, article IV, section 15 of the Pennsylvania Constitution expressly provides for an override of the Governor's

guage expressed only a legislative intent to define a quorum as a majority of the remaining members. Had section 406 provided for a majority vote of the remaining members the language would be analogous to section 413. Furthermore, as noted by the court, a contrary result in the context of filling vacancies would be likely to lead to absurd deadlocks frustrating the legislative purpose of expeditiously dealing with vacancies.

veto by using the word "all" to modify "the members elected..."

> Every bill which shall have passed both Houses shall be presented to the Governor; if he approves he shall sign it, but if he shall not approve he shall return it with his objections to the House in which it shall have originated, which House shall enter the objections at large upon their journal, and proceed to reconsider it. If after such reconsideration, two-thirds of all the members elected to that House shall agree to pass the bill, it shall be sent with the objections to the other House by which likewise it shall be reconsidered, and if approved by two-thirds of all the members elected to that House it shall be a law.

The common thread in all of these provisions is the use of an adjective to modify the word "members" which expressly states the intention that a proportion of the whole number of members is required.

An example showing the legislature also has the ability to use clear language codifying the Common Law Rule, thus requiring only a majority of a quorum is:

> Six directors attending shall constitute a quorum for the transaction of any business and, unless a greater number is required by the by-laws of the agency, the *act of a majority of the directors present at any meeting shall be deemed the act of the Board.*

Pennsylvania Higher Education Assistance Agency Act of 1963, Act of August 7, 1963, P.L. 549 § 3(b), *as amended,* 24 P.S. § 5103(b) (Supp.1982–83). *See Stoltz v. McConnon,* 473 Pa. at 167 n. 7, 373 A.2d at 1100 n. 7. The intention of the legislature regarding the number of votes required to carry a proposition is once again ascertained from the adjectival phrase modifying the noun describing the collective body. In the above example, the adjectival phrase provides for action by a subset of the whole of the membership, *e.g.* the members present at the meeting.

In establishing the number of votes required to override the mayor's veto in the Third Class City Code the legislature chose simply to state the requirement in terms of a fraction

of "the members". It wholly omitted any adjective expressing either alternative. Thus, the statute is ambiguous on its face. Since our cases establish no presumption in favor of either we must search elsewhere for the intent.

Other sources relating to the resolution of this ambiguous statutory language are also unclear. Favoring the common law view that the use of the phrase "two-thirds of the members" means two-thirds of the membership is a footnote in one version of Robert's *Rules of Order,* (Pyramid Publications, Inc. 1967):

> A two-thirds, or majority, vote means two-thirds or a majority of votes cast, ignoring blanks, which should never be counted. Sometimes By-Laws provide for a vote of two-thirds of the members present, or simply of two-thirds of the members, which may be very different from a two-thirds vote. Thus, if twelve members vote on a question in a meeting of a society where twenty are present out of total membership of thirty, a two-thirds vote would be eight; a two-thirds vote of those present would be fourteen; and a vote of two-thirds of the members would be twenty. In this case a majority vote would be seven.[5]

With respect to statutes that confer a power to be exercised by two-thirds of "the members" or two-thirds of "that body" there is a division between the text writers. 4 McQuillan, *Municipal Corporations* § 13.31(c) at 556 (Revised 3d ed. 1979) (footnotes omitted) states:

> (p)ower conferred upon a city council to be exercised "by a vote of two-thirds of that body," or by an "affirmative vote of two-thirds of the members of the council," has been construed to mean two-thirds of a legal quorum, and not two-thirds of the entire membership of the council.

On the other hand, 1 Antieau, *Municipal Corporation Law,* § 4.11, at 4–24 (1982) (footnotes omitted) opines:

**5.** However, we note that *Robert's Rules of Order Newly Revised* (Scott, Foresman and Company, 1970) at pp. 341–342, under copyright by the Roberts Rules Association accords neither alternative the benefit of a presumption, simply setting out problems with both and emphasizing the importance of clarity to the draftsman.

> There are many statutes and charter provisions requiring approval of a majority of the entire municipal legislature to pass certain kinds of ordinances, resolutions and measures and then, of course, a majority of those voting is not enough. Frequently certain types of ordinances, such as zoning ordinances, require more than a simple majority vote. There are frequently charter provisions and statutes requiring action to be taken by two-thirds "of the council" or "of the commission." Such statutes are generally interpreted to require favorable votes of two-thirds of the entire governing body of the local governmental entity.

Thus, neither this statute, our own cases, or the recognized text writers provide a clear answer to the meaning of the language in question.

To ascertain the legislature's intention in its use of the phrase "two-thirds of the members" we turn then to general principles of statutory construction.[6] These include the rule of construction that a section of a statute must be construed with reference to the entire statute and not alone. We also note that wherever possible we must give effect to all of its provisions. 1 Pa.C.S. § 1921(a). *See Commonwealth v. Hill,* 481 Pa. 37, 391 A.2d 1303 (1978). Moreover, in determining the intention of the General Assembly we must presume that it did not intend an absurd result. 1 Pa.C.S. § 1922(1).

With such considerations in mind we examine other provisions of the Optional Third Class City Charter Law dealing with voting requirements for passage of ordinances to see whether they shed light on the meaning of section 413(a). Article VI, section 607 (General Provisions Common to Op-

---

**6.** The intention of the General Assembly may be ascertained by considering the following:

    (1) The occasion and necessity for the statute.

    . . . .

    (3) The mischief to be remedied.

    (4) The object to be attained.

    (5) The former law, if any, including other statutes upon the same or similar subjects.

    (6) The consequences of a particular interpretation.

1 Pa.C.S. § 1921(c).

tion Plans) of the Optional Third Class City Charter Law provides that "[a] majority of the whole number of members of the council shall constitute a quorum, but no ordinance shall be adopted by the council without the affirmative vote of a majority of all the members of the council." 53 P.S. § 41607. Under the Commonwealth Court's holding that section 413(a) evidences an intention to preserve the common law rule it becomes possible to override a mayor's veto with fewer than the minimum number of votes required by section 607 to enact the ordinance in the first instance.

For example, in this seven member council section 607 requires four votes to pass an ordinance. A quorum consists of four members. Under the Commonwealth Court's holding two-thirds of that quorum, three votes, could override the mayor's veto. Such a result is wholly at odds with the purposes of a veto provision. Reconsideration of an ordinance after a veto puts the original bill back before a legislative body for more careful deliberation on the question of its adoption. *Kubik v. City of Chicopee,* 353 Mass. 514, 233 N.E.2d 219 (1968). *Accord Commonwealth ex rel. Atty. General v. Barnett,* 199 Pa. 161, 48 A. 976 (1901). Such reconsideration can be made meaningless if a mayoral veto can be overriden by fewer votes than required to act initially.

Moreover, putting our particular statute to one side, in every case in which the legislature has provided a municipal executive with veto power it has related the fractional number of votes required for an override of that veto to a whole consisting of the entire membership of the municipal body. We find no policy reasons in the Optional Third Class City Code suggesting the legislature had any reason to deviate from that course.

For these reasons and in order to avoid a result which permits a mayor's veto to be overriden by less votes than needed to send a bill to him in the first place, we resolve the ambiguity of section 413, after reading it in relation to section 607, by concluding the legislature intended the phrase "two-thirds of the members" to mean two-thirds of

all the members in uniformity with all other municipal statutes on executive veto.

Reversed.

McDERMOTT, J., filed a dissenting opinion in which LARSEN, J., joined.

McDERMOTT, Justice, dissenting.

The seven member city council of Erie, Pennsylvania passed a resolution.

The resolution was forwarded to the Mayor. He vetoed the resolution. It was returned to the council, where a two-thirds vote was required to override. When the resolution was re-submitted, six of the seven council members were present. Four voted to override, two to sustain the veto, one absent.

The city solicitor ruled that the override failed because the Optional Third Class City Charter Law * required a vote by *all* the members of the council. Six present is not seven, hence the veto was sustained.

Mandamus was brought to compel the clerk of council to enter the vote in the official journal as overriding the veto.

The court of common pleas denied the petition. The Commonwealth Court reversed, herce this appeal. The common law of Pennsylvania is clear:

"[A] majority of those voting in the presence of a quorum, can act for a Board or a body."

\* \* \* \* \* \*

It is true that Pennsylvania courts have repeatedly applied the common law rule to representative municipal bodies of limited membership in the absence of *any* language to the contrary in the relevant enabling statute. *Stoltz v. McConnon,* 473 Pa. 157, 163–64, 373 A.2d 1096, 10 (1977) (emphasis original).

* Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. § 41413(a).

The Legislature may alter that rule as they see fit. If they do not, then the principle of democratic government embedded in the common law prevails. We must presume the Legislature knows so elementary a rule and would clearly act to alter it where they see a need. That they have done so in specific instances is witness to their knowledge and intention. The majority obviously desires to believe the Legislature intended to alter the rule and to prove the point has sailed around the Horn to reach Lake Erie. We are treated to analogies from the body politic, the parsing of adjectival clauses and the admittedly inconclusive view of text writers and popular manuals of parliamentary procedure. The majority became so entrenched in their own labors that they overlooked the proofs they present. Indeed they do prove that the Legislature knows the uses of specific language to alter the common law rule. Mr. Justice Hutchinson has marshalled the instances where they could not be clearer. When one contrasts the section in question with his examples, the difference is conclusive. In all examples offered the Legislature said "all the members," in Section 413(a), 53 P.S. § 41413(a) they simply said "the members". Only by deliberate persistence does the Court overcome its own logic.

In writing section 413(a) it is clear that the Legislature had its own precedent before it. In section 607(a), when they specified the manner in which a resolution originates in the Council, they wrote:

> Section 607. (a) Council shall determine its own rules of procedure, not inconsistent with ordinance or statute. A majority of the whole number of members of the council shall constitute a quorum, but no ordinance shall be adopted by the council without the affirmative vote of a majority of *all* the members of the council.

53 P.S. § 41607(a) (emphasis supplied).

The Commonwealth Court recognized this distinction of intention and properly reversed the court of common pleas.

The Legislature, fully aware of the common law rule chose different methods for different occasions. They chose that *all* the members originate a resolution and that *the* members under the common law rule, vote by two-thirds to override a veto. These are obviously two different functions. The majority points out with misgivings, that a resolution vetoed can be passed upon re-consideration by a lesser number than required to pass it originally. While that is true, it is also true that the will of six ought not be stymied by one who deliberately or otherwise absents himself. That the Legislature saw the problem is clear because they raised the proportion of votes necessary to override a veto from a majority to a two-thirds vote. Had they wanted *all* members present for that vote they would have said so, as they did in requiring all members present to pass the original resolution. A resolution originally passed by *all* the members is entitled to be protected from deliberate, strategic abstention, as this Court so pertinently said:

> [O]ne or a relatively few persons could, by their intentional absence from, or by their presence at a meeting and their failure to vote, or their casting a blank or illegal ballot, block indefinitely a important election or important legislation and thus paralyze government with obviously great harm to the public interest.

*DiGiancinto v. City of Allentown,* 486 Pa. 436, 440, 406 A.2d 520, 522 (1979), *quoting, Meixell v. Borough Council of Borough of Hellertown,* 370 Pa. 420, 425, 88 A.2d 594, 596 (1952).

Obviously, there are anomalies at either end. We have firmly opted to avoid the anomaly of one member delaying and obstructing the democratic process by his absence. The Legislature has chosen to accept the anomaly of a lesser vote in a reconsideration after a veto. Their decisions should be controlling.

LARSEN, J., joins in this dissenting opinion.