Munce et al., Appellants, *v.* O'Hara, Secretary.

Argued October 30, 1940.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*David H. Weiner,* for appellant.

*H. J. Woodward,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellee.

*Claude C. Smith,* with him *Albert C. Weymann, Jr.,* and *Duane, Morris & Heckscher,* for intervenor.

OPINION BY MR. JUSTICE PATTERSON, December 2, 1940:

The controlling question on this appeal is whether a majority of the votes cast upon the proposition is a sufficient compliance with the provision of subsection (g) of section 4 of the Act of April 18, 1929, P. L. 549,* that "Any county, city, borough or township may, *by a majority vote of its qualified electors cast at any general election* held not earlier than one hundred and three weeks after they have voted to adopt such machines, direct the discontinuance of the use of voting machines at elections held in such county, city, borough or township," or whether, as the court below held, the statutory provision requires a majority vote of all the qualified electors of the political subdivision or, at least, a majority vote of such of the qualified electors as participate in the general election whether voting upon the proposition or not.

No method having as yet been devised whereby to compel a complete vote by all the voters, the practical working of the elective system necessarily requires that those who abstain from voting be considered as acquiescing in the result declared by a majority of those who exercise the suffrage. As stated in *Cashman v. Entwistle,* 213 Mass. 153, 100 N. E. 58: "It is a fundamental principle of our system of representative government that the will of the majority expressed according to law

---

* Reënacted, in substance, in Article XI of the "Pennsylvania Election Code" of 1937, P. L. 1333.

must prevail. But the majority of those who actively participate in the affairs of state and not of the entire body of voters, controls. Elections must be settled as a practical matter by those manifesting interest enough to vote. Failure on the part of some of the electorate to take the trouble to express their views by depositing their ballots cannot stop the machinery of government. Apathy is not the equivalent of open opposition. It is in the nature of our institutions that the majority of those who vote must accomplish the avowed purpose of all elections, which is the choice among candidates or the approval of policies."

This being true, the great weight of authority holds that where a statute provides for a vote of "a majority of the voters," "a majority of the legal voters," "a majority of the qualified voters," etc., all that is required is a majority of those actually voting, unless a contrary legislative intention and purpose is very clearly expressed. See 1 Dillon, Municipal Corporations (5th ed.), section 383, and cases there collected. In accordance with the general rule are our own decisions touching upon the subject. Thus, in *Craig v. First Presbyterian Church*, 88 Pa. 42, this Court held that the majority intended by the Act of April 18, 1877, P. L. 54, providing for the removal of dead bodies from the burial grounds of religious societies and directing that no application should be made therefor "except in pursuance of the wishes of a majority of the members of such society or church, expressed at a church election, held for that purpose," was a majority of those present and voting at such election, saying, at 47: "Of the persons present at the meeting, one hundred and sixty-three voted in favor of the resolution and four voted against it. It is said, however, that this was not a majority of all the members of the congregation. This is true. But it was a majority of all who were present in obedience to the call. Those who did not attend must be presumed to have assented. It is well settled upon authority that

the minority present were bound by the action of the majority. . . . The fundamental principle of every association for the purpose of self-government is, that no one shall be bound except with his own consent, expressed by himself or his representatives; but actual assent is immaterial—the assent of the majority being the assent of all; and this is not only constructively but actually true; for that the will of the majority shall, in all cases, be taken for the will of the whole, is an implied but essential stipulation in every compact of the sort." Again, in *Schlichter v. Keiter,* 156 Pa. 119, where the construction of a provision in a church constitution that "There shall be no alteration of the foregoing constitution unless by the request of two-thirds of the whole society" was involved, it was held that a majority of the whole number of persons voting was all that was required to adopt a new constitution. There, at 145-46, appears the following: "It is said that some refrained from voting because of objection to the proposed revision, or the mode of proceeding to ascertain the wish of the society. If so it was an ineffectual kind of opposition. In all elections the nonvoting must be counted as willing to be bound by the action of the majority of those who vote. . . . In elections under the laws of the states or the United States this has never been doubted. . . . A majority consists of more than one-half of those who vote at a given election, not of those who might have voted, but did not vote." See also *Commonwealth v. Stauffer,* 289 Pa. 139, 148.

And, according to what we regard as the better view, where, as here, a proposition to which such a statutory provision relates is to be submitted at a general election, the submission of the question is to be regarded as a special election for that purpose, and the votes cast thereon are to be considered separately and apart from any votes cast for candidates for office, or upon other questions. See, for example, *Gillespie v. Palmer,* 20 Wis. 544 ("majority of all the votes cast at such elec-

tion") ; *State v. Barnes,* 3 N. Dak. 319, 55 N. W. 883, ("majority of the legal votes cast") ; *State v. Grace,* 20 Ore. 154, 25 Pac. 382, ("majority of all the votes cast"). As is aptly said in *Cashman v. Entwistle,* supra, at 156: "Those who come to an election and cast a blank ballot in principle are no more efficacious in expressing their convictions than those who absent themselves altogether. Both classes must be presumed to be willing to abide by the decision made by the majority of those voting, unless there is an express provision of the law to the contrary: *First Parish in Sudbury v. Stearns,* 21 Pick. 148; *Carroll County v. Smith,* 111 U. S. 556, 563, 4 Sup. Ct. 539, 28 L. Ed. 517."

It is apparent that there is no warrant for construing subsection (g) of section 4 of the Act of 1929, standing alone, as the court below construed it. But, it is urged that a legislative purpose that it should be so construed is indicated when the language used is compared with that used in section 2 of the Act, relating to the authorization or adoption of voting machines. The language of the latter section is as follows: "Any county, city, borough or township may, by a majority vote of its qualified electors *voting thereon* cast at any general or municipal election, authorize and direct the use of voting machines for registering or recording and computing the vote at all elections held in such county, city, borough or township or in any part thereof." It is contended that the omission of the words "voting thereon," in subsection (g), clearly shows the legislative intention that a majority of all the qualified electors or, at least, a majority of all those participating in the general election, shall be required for the discontinuance of the use of voting machines and not, as in the case of authorization, merely a majority of those participating and voting upon the question. With this contention we do not agree.

Since, under the rules already adverted to, the language of subsection (g), which is concededly susceptible

of at least two constructions, has inherently the same meaning as if the omitted words had been included therein, and consequently the same meaning as the language of section 2 from which the supposed distinction is sought to be deduced, we attach no legal significance to the mere fact of their omission. See Statutory Construction Act of 1937, P. L. 1019, section 33. To do so and thus find, solely by implication, a legislative purpose that the language used should be construed as appellee contends, would not only be unwarranted in such a case as this, but would be to find a legislative intention contrary to that which is plainly indicated, as we think, by the further provision of subsection (g) that "The question for the discontinuance of the use of such voting machines shall be submitted to the voters, *in the same manner*, and subject to the same requirements as to petition and signatures thereon, as is required for the submission of the question on the authorization of the use of such voting machines."

In accordance with the views expressed, we hold, contrary to the court below, that a majority of votes cast upon the proposition is a sufficient compliance with the requirements of the statutory provision in question.

Decree reversed at appellee's cost.