ROLAND EUWEMA, JULIE KEAN, IDALIA CONNOR, VIRGINIA BERGAN, DONNA SARGEANT, VINCENT HOOVER ADAMS GORDON, Plaintiffs

v.

HENIRITA TODMAN, Supervisor of Elections, ULLA S. MULLER, Chairman, GASTON BENJAMIN, ERIK BONDE–HENRIKSEN, HERIBERTO CAPO, ELAINE COLON, GERTRUDE DUDLEY, PIERRE ALMANDO MAGRAS, AEGIST MARSH, GERDA N. MARSH, JACOB M. MONSANTO, TERRESITA NUNEZ, GEORGE RIEHLY, Members of the Board of Elections, District of St. Thomas-St. John GRACIANO BELARDO, SAMUEL BOUGH, PHILIP C. CLARK, DENNIS CLARKE, JULIUS A. COOPER, ELISA DENNIS,

BERYL FRANCIS, DOUGLAS A. GARDINE, WILFRED A. JAMES, BLANCA M. RODRIGUEZ, HEZEKIAH WALCOTT, Members of the Board of Elections, District of St. Croix PETER J. O'DEA, Attorney General of the Virgin Islands, Defendants

Civil No. 410-1970

District Court of the Virgin Islands

Div. of St. Croix

March 3, 1971

Hodge & Sheen (Albert A. Sheen, Esq., of counsel), Christiansted, St. Croix, V.I., *for the plaintiffs*

Irwin J. Silverlight, Esq., Assistant Attorney General, St. Thomas, V.I., *for the defendants*

CHRISTIAN, *Chief Judge*

## OPINION

The question here presented is not whether as a matter of policy or justice the franchise should be extended to persons eighteen years of age or older. Nor is it, properly stated, whether a blank ballot should be tallied as an affirmative or a negative vote on a given proposition. Precisely at issue is whether under Act No. 2845 of the Eighth Legislature of the Virgin Islands, "An Act to Authorize a Voting Age Referendum at the Time of the 1970 General Election", the voting age question submitted to the electorate is to be deemed part and parcel of the general elections held on November 3, 1970, or a separate and special election held on the same date.

The basic qualifications for electors in the Virgin Islands are laid down in the Revised Organic Act of the Virgin Islands which in part here pertinent reads:

The franchise shall be vested in residents of the Virgin Islands who are citizens of the United States, twenty-one years of age or over.[1]

Recognizing the current clamor of those citizens between the ages of eighteen and twenty-one in protest of their disenfranchisement which they claim to be unlawful, unjust and without reasonable basis, and perhaps in acknowledgment of the justice of the cause of this substantial body of youthful citizens, the Congress, with the approval of the President, opened the way for the lowering of the voting age in the Virgin Islands by amending the Revised Organic Act to provide,

Section 4 of the Revised Organic Act of the Virgin Islands (68 Stat. 497) is amended (1) by inserting "(a)" immediately after "Sec. 4."; and (2) by adding at the end thereof the following new subsection:

"(b) The legislature shall have authority to enact legislation establishing the voting age for residents of the Virgin Islands at an

---

[1] Revised Organic Act § 4, 48 U.S.C. § 1542 (1964).

227

age not lower than eighteen years of age, if a majority of the qualified voters in the Virgin Islands approve in a referendum election held for that purpose."[2]

It was to implement this Congressional grant of authority that Act No. 2845, mentioned above, was duly enacted into law. In its operative sections, the Act reads:

Be it enacted by the Legislature of the Virgin Islands:

SECTION 1. At the general election in the year 1970, there shall be submitted to a referendum election questions to determine the will of the qualified electors of the Virgin Islands with respect to lowering the voting age. The questions shall be in the following form:

1. I am in favor of lowering the voting age in the Virgin Islands to:

Mark one square only

Age 18 ☐
Age 19 ☐
Age 20 ☐

2. I am opposed to lowering the voting age in the Virgin Islands ☐

The questions shall be printed on separate official ballot by the Supervisor of Elections with appropriate instructions. A sufficient number of ballots shall be furnished to each board of elections. Ballots shall be printed in English with a Spanish translation of the English immediately following.

SECTION 3. The votes cast on the question shall be counted by the election officers and returns thereof made by them. This referendum election shall be governed by the Election Laws of the Virgin Islands, except as otherwise provided by this Act, and all penalties provided by said laws shall apply to this election.

SECTION 4. If at the general election in the year 1970, a majority of the electors voting at said election vote in favor of lowering the voting age, the Legislature of the Virgin Islands shall adopt legislation to amend the Election Laws of the Virgin Islands accordingly.

---

[2] P.L. 91–460; 84 Stat. 978.

The referendum was held at the general election on November 3, 1970. The results thereof, as certified by the Supervisor of Elections, reflect that of a total Virgin Islands electorate of 19,756, those voting at the general election numbered 16,122. Of those voting, 7,469 voted to lower the voting age to 18, 726 opted for age 19, 2,063 for age 20, and 3,158 were opposed to lowering the voting age. Blank ballots were deposited in the various ballot boxes by 2,575 electors and 131 spoiled theirs. On the foregoing results, this Court is called upon to determine which of the several questions put to the voters carried the day.

The language of the amendment to Sec. 4 of the Organic Act leaves no room for doubt or controversy. The grant of authority to the Legislature was to establish the minimum voting age *"at an age"* (emphasis supplied) approved by ". . . a majority of the qualified voters in the Virgin Islands . . . in a referendum election *held for that purpose"* (emphasis supplied). Clearly, the Congress contemplated, and provided for, a special election in which that issue was to be decided. The vexing problem, with attendant confusion, is spawned by Sec. 4 of the Act of the Virgin Islands Legislature, for that section, in equally unequivocal terms, firmly wedded the special election authorized by the Congress to the 1970 general elections.

█ Despite one or two holdings to the contrary, it is settled law that a

. . . proposition must receive the majority or other required proportion of all the votes cast at the election, where the Constitution or Statute requires ratification by a majority of the electors of the State or provides for ratification "whenever a majority of the electors voting at a general election shall so determine" . . . or, generally, where the requirement is that the proposition submitted at a general election must receive in its favor a majority or other proportion of the votes of the electors voting at such election, or a majority or other proportion of all the votes cast at the election. In other words, the proposition is not carried by a

229

majority of the votes cast therefor unless such majority is also a majority of all votes cast at the election.[3]

Thus measured, the certified returns make clear that none of the three ages below twenty-one received "a majority of the electors voting" at the general election of November 3, 1970. But the general rule stated here has application only where the "Constitution or Statute" requires that the proposition be submitted at a general election.

◼ The broad grant of legislative power given to this territory in its Organic Act is hedged with the restriction that it may pass no law which shall be ". . . inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands . . . ."[4] Designedly or unwittingly, this is exactly what Act No. 2845 purports to do. In either event, Sec. 4 of the Virgin Islands statute must give way. I hold, therefore, that in so far as that section of the act of the territorial legislature links the voting age referendum to the 1970 general election and makes the outcome of that referendum dependent on the votes of ". . . a majority of the electors voting at said election", that section is a nullity.

◼ Further, I hold that the Congress having decreed that the qualified voters of the Virgin Islands should decide the issue of minimum voting age "in a referendum held for that purpose", the referendum held on November 3, 1970 was a special election, not required by the Congress to be, and in no way a part of the general election, but held

---

[3] 26 Am.Jur.2d, Elec. sec. 311, p. 136. See also, Thurston County Farm Bureau v. Thurston County, 136 Neb. 575, 287 N.W. 180 (1939); Stembridge v. Newton, 213 Ga. 304, 99 S.E.2d 133 (1957); Allen v. Burkhart, 377 P.2d 821 (Okla. 1963); State ex rel. Blankenship v. Gaines, 136 Wash. 610, 241 Pac. 12 (1925).

[4] Revised Organic Act § 8(a), 48 U.S.C. § 1574(a) (1964).

on the same date of the general election merely as a matter of convenience.[5]

Sec. 4 of the Revised Organic Act as amended provided for the lowering of the voting age ". . . if a majority of the qualified voters . . . approve." There were, on November 3, 1970, 19,756 "qualified voters" in the Virgin Islands. As we have seen but 7,469, considerably short of a majority of those qualified to exercise the franchise, voted to lower the voting age to 18, and this was the highest number of votes received by any age group. The meaning of "qualified voters", then, is of critical importance.

 The proper basis for computing a majority, as that word is used in election laws is well stated in American Jurisprudence, 2nd:

### § 310. BASIS OF COMPUTING MAJORITY.

In the absence of a statutory provision to the contrary, voters not attending the election or not voting on the matter submitted are presumed to assent to the expressed will of those attending and voting and are not to be taken into consideration in determining the result. This is true whether the matter is submitted at a meeting under a statute requiring the assent of a majority of the voters at the polls. Thus, a law requiring a question to be decided or an officer to be elected by the votes of the majority or other proportion of the voters does not require that the majority or other proportion of all the persons entitled to vote actually vote affirmatively, but only that the result be decided by a majority or other specified proportion of the votes cast. Similarly, although there are cases that point to a contrary conclusion, generally the term "qualified voter" in a provision as to the proportion of voters necessary for the adoption of a measure refers, not to those qualified and entitled to vote, but to those qualified and actually voting.[6]

---

[5] See, In re Todd, 208 Ind. 168, 193 N.E. 865 (1935); City of Wellsville v. Connor, 91 Ohio 28, 109 N.E. 526 (1914); Munce v. O'Hara, 340 Pa. 209, 16 A.2d 532 (1940).

[6] 26 Am.Jur.2d, Elections, § 310, p. 135.

This is the view adopted by a majority of the jurisdictions which have faced this issue,[7] and I adhere to it. To hold otherwise would be to permit an indifferent minority to prevent a determination of issues and thus impede or totally obstruct vital governmental processes and interests.

■ Including the 3,158 electors who were opposed to lowering the voting age, 13,416 voters participated in the referendum. Of these, 7,469 qualified electors, a clear majority, voted to establish the voting age "at an age not lower than eighteen years of age", namely 18. Eighteen-year olds have thus "won their spurs". The Supervisor of Elections will be directed to certify this result to the Legislature of the Virgin Islands. That body will thereupon be authorized and empowered to enact the appropriate enabling legislation effectuating the will of the clear majority of those persons who voted in the special referendum election.

---

[7] See, Virginia Railway Co. v. Federation, 300 U.S. 515 (1937); Chapel v. Allen, 334 Mich. 176, 54 N.W.2d 209 (1952); Munce v. O'Hara, supra.