[Cite as *State ex rel. Murray v. Scioto Cty. Bd. of Elections*, 127 Ohio St.3d 280, 2010-Ohio-5846.]

THE STATE EX REL. MURRAY *v.* SCIOTO COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Murray v. Scioto Cty. Bd. of Elections*,

127 Ohio St.3d 280, 2010-Ohio-5846.]

*Mandamus — Prohibition — Municipal elections — Mayoral recall — Sufficiency of petition for recall — Mandamus not available when real nature of relief requested is declaratory judgment or prohibitory injunction — Petition's failure to comply with requirements of R.C. 3501.38(E) immaterial when city charter contains expressly conflicting parallel requirements — Board of elections did not abuse discretion or disregard applicable law in determining that petition contained sufficient valid signatures — Writ of prohibition denied.*

(No. 2010-1963 — Submitted November 30, 2010 — Decided

December 2, 2010.)

IN MANDAMUS and PROHIBITION.

————————————

**Per Curiam.**

{¶ 1} This is an expedited election action for writs of mandamus and prohibition to prevent respondents, the Scioto County Board of Elections and its members, from conducting a December 7, 2010 special election on a mayoral recall. Because the board of elections neither abused its discretion nor clearly disregarded applicable law by determining that the recall petition contained a sufficient number of valid signatures, we deny the writ of prohibition. We dismiss the mandamus claim for lack of jurisdiction.

**Facts**

*Recall Petition*

{¶ 2} Relator, M. Jane Murray, is the mayor of the city of Portsmouth, Ohio. On October 9, 2010, a petition seeking an election to recall the mayor was

filed with the city. The petitioners sought the recall based on their claims against the mayor specified in the petition:

**{¶ 3}** "EPA compliance issues.

**{¶ 4}** "Arbitrary/unlawful placement of traffic control devices.

**{¶ 5}** "Came out against the best hope for jobs and future security for area families at the Piketon USEC facility by casting the only negative vote to their plans.

**{¶ 6}** "Placing her own personal wants ahead of the other city employees working under deplorable conditions in the city building by arbitrarily and unlawfully contracting prior to taking office, and after taking office having renovations done to the Mayor's office without having funds authorized and appropriated in accordance with the Ohio Revised Code and Portsmouth City ordinances.

**{¶ 7}** "Failure to provide a budget for the city of Portsmouth in accordance with the City Charter.

**{¶ 8}** "Making public remarks about persons that have resulted in three lawsuits having been filed against her and the City of Portsmouth alleging slander and libel."

**{¶ 9}** The petition comprises 66 part-petitions containing a total of 1,368 signatures. Each part-petition includes a space for the circulator's affidavit, which provides:

**{¶ 10}** "I, _____, being duly sworn, depose and say that I, and I only personally circulated the foregoing petition paper and that all signatures appended thereto were made in my presence and are the genuine signatures of the persons whose names they purport to be.

"_____

"Subscribed and sworn before me this _____ day of _____, 20___.

"_____

"Notary Public

"(seal)"

{¶ 11} Each part-petition also included the following "notice": "Whoever commits election falsification is guilty of a felony of the fifth degree."

{¶ 12} On part-petition 5, which contains seven signatures found by the Portsmouth city clerk to be valid, the circulator signed the first blank of the affidavit but failed to sign the second blank. For part-petition 2, the Portsmouth city clerk credited 15 valid signatures even though it contained only 14 valid signatures.

{¶ 13} On October 20, 2010, the city clerk certified the sufficiency of the recall petition by finding that it contained 1,171 valid signatures, which exceeded the 1,148 valid signatures required by Section 151 of the Portsmouth Charter[1] for a recall petition. On October 28, the Portsmouth City Council enacted Ordinance No. 2010-69, which ordered that a special election on the mayoral recall be held on December 7, 2010. The next day, the city clerk provided a certified copy of the ordinance to the Scioto County Board of Elections.

*Protest and Board of Elections Decision*

{¶ 14} On October 29, Murray filed a protest with the board of elections against the recall petition. Murray raised several grounds, including the following:

{¶ 15} 1. "All part-petitions fail to contain a statement by the circulator indicating the number of signatures on the part-petition as required by Sections 143 and 165 of the City of Portsmouth Charter ('Charter') and R.C. § 3501.38(E) and are invalid."

---

1. Section 151 of the Portsmouth Charter provides that for a recall petition to be sufficient, it "must bear the signatures of qualified electors of the City equal in number to at least twenty-five per centum (25%) of the electors who voted at the last preceding regular municipal election."

{¶ 16} 2. "All part-petitions fail to contain a statement by the circulator as required by Sections 143 and 165 of the Charter and R.C. § 3501.38(E) that to the best of the circulator's knowledge and belief all signers were qualified to sign the petition and are invalid."

{¶ 17} 3. "Part-petition 5 is invalid because it is not signed by the circulator as required by Sections 27, 143, and 165 of the Charter and R.C. § 3501.38."

{¶ 18} 4. "The petition fails to contain the minimum number of valid signatures of electors of the City of Portsmouth required by Section 151 of the Charter for the question to be submitted to the voters."

{¶ 19} On that same day, the board of elections issued a notice that a hearing on the protest would be held on November 8. On November 5, 2010, Murray supplemented her protest with several additional grounds, including that the city clerk had mistakenly counted one invalid signature on part-petition 2 as valid.

{¶ 20} Just before the board's November 8 hearing on Murray's protest against the recall petition, the committee representing the recall petitioners filed its own protest, claiming that the city clerk had erroneously stricken three signatures from the petition. Murray objected to the board's hearing of the recall petitioners' protest on that date due to the protest's lack of timeliness. The board decided not to consider the recall petitioners' claim at the hearing, instead leaving it in abeyance until the board's November 17 regular meeting.

{¶ 21} At the November 8 board hearing on Murray's protest, the parties submitted sworn testimony and other evidence. The board sustained certain grounds of Murray's protest and invalidated an additional 16 petition signatures. The board denied the remaining grounds of Murray's protest, including those previously set forth. The board concluded that the recall petition contained a total

4

of 1,155 valid signatures, which still exceeded the minimum of 1,148 valid signatures required for the December 7, 2010 special recall election.

*Mandamus and Prohibition Case and Subsequent Board Meeting*

{¶ 22} Four days later, on November 12, Murray filed this expedited election action for writs of mandamus and prohibition to prevent the board of elections and its members from submitting the mayoral recall to the electorate at the December 7, 2010 special election. We issued an accelerated schedule for the submission of an answer, evidence, and briefs. *State ex rel. Murray v. Scioto Cty. Bd. of Elections*, 127 Ohio St.3d 1433, 2010-Ohio-5534, 936 N.E.2d 963.

{¶ 23} On November 17, at its regular meeting, the board of elections corrected its tabulation of valid signatures in the recall petition by deducting the additional signature the city clerk had mistakenly counted as valid on Part-Petition 2, which was one of the grounds of Murray's protest, and adding the three signatures that the city clerk had previously stricken, which were the subject of the recall committee's November 8 protest. The board validated the three additional signatures when it determined that they were the signatures of the electors they purported to be. The board thus concluded that the correct number of valid signatures on the recall petition was 1,157, which exceeded the 1,148 signatures required. The board made this determination without holding an additional hearing.

{¶ 24} The board of elections and its members filed an answer, and the parties submitted evidence and briefs.

{¶ 25} This cause is now before the court for our consideration of the merits.

### Legal Analysis

*Mandamus*

{¶ 26} Murray requests a writ of mandamus to compel the board of elections to sustain the specified grounds of her protest and to invalidate the recall petition.

{¶ 27} "This court lacks jurisdiction over complaints in mandamus if the allegations establish that the relator actually requests relief in the nature of a declaratory judgment and a prohibitory injunction." *State ex rel. Knowlton v. Noble Cty. Bd. of Elections*, 126 Ohio St.3d 483, 2010-Ohio-4450, 935 N.E.2d 395, ¶ 29. "We have applied this jurisdictional rule to expedited election cases by examining the complaint to determine whether it actually seeks to prevent, rather than compel, official action." *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 20.

{¶ 28} Although some of the allegations and requests for relief in Murray's complaint are couched in terms of compelling affirmative duties, she actually seeks (1) a declaratory judgment that the board erred in denying the specified grounds of her protest and (2) a prohibitory injunction preventing the recall election.

{¶ 29} Therefore, because Murray seeks relief in the nature of declaratory judgment and prohibitory injunction, we lack jurisdiction to consider the merits of her mandamus claim and therefore dismiss it. See *Knowlton*, at ¶ 31; *State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 12.

*Prohibition*

{¶ 30} Murray also requests a writ of prohibition to prevent the board of elections and its members from submitting the mayoral recall to the electorate. To be entitled to the writ, Murray must establish that (1) the board of elections and its members are about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for

which no other adequate remedy exists in the ordinary course of law. *State ex rel. Eshleman v. Fornshell*, 125 Ohio St.3d 1, 2010-Ohio-1175, 925 N.E.2d 609, ¶ 11.

{¶ 31} Murray established the first and third requirements for the writ because the board of elections exercised quasi-judicial authority by ruling on her protest after a hearing that included sworn testimony, and she lacks an adequate remedy in the ordinary course of law given the proximity of the December 7 special election. Id. at ¶ 12.

{¶ 32} For the remaining requirement to establish entitlement to the requested writ of prohibition, "[i]n extraordinary actions challenging the decisions of * * * boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11; *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167, 928 N.E.2d 1082, ¶ 17.

{¶ 33} Murray claims that the board of elections abused its discretion and clearly disregarded applicable law, including R.C. 3501.38(E) and certain provisions of the Portsmouth Charter, by not sustaining certain grounds of her protest and invalidating the recall petition.

**R.C. 3501.38(E)(1)**

{¶ 34} Murray first contends that the petition was defective because each part-petition did not comply with R.C. 3501.38, which provides:

{¶ 35} "All declarations of candidacy, nominating petitions, or other petitions presented to or filed with the secretary of state or a board of elections or with any other public office for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue shall, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code relating to them, be governed by the following rules:

{¶ 36} "* * *

{¶ 37} "(E)(1) On each petition paper, the circulator shall indicate the number of signatures contained on it, and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code."

{¶ 38} Murray contends that the petition did not comply with R.C. 3501.38(E)(1), because each circulator statement (1) did not "indicate the number of signatures contained on it" and (2) did not specify that "all signers were to the best of the circulator's knowledge and belief qualified to sign."

{¶ 39} Noncompliance with either of these statutory requirements normally requires invalidation of the part-petitions. See, e.g., *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 11-13 (board of elections did not err in invalidating petition because circulator statements specified numbers less than the actual numbers of signatures contained on the part-petitions); *State ex rel. Commt. for Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 49 ("R.C. 3501.38(E) demands strict compliance").

{¶ 40} Nevertheless, "[i]n matters of local self-government, if a portion of a municipal charter expressly conflicts with a parallel state law, the charter provisions will prevail." *State ex rel. Lightfield v. Indian Hill* (1994), 69 Ohio St.3d 441, 442, 633 N.E.2d 524; Sections 3 and 7, Article XVIII, Ohio Constitution. Therefore, although we will construe municipal charters to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible, see *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 31, we will not do so when there is a conflict. *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472,

475, 764 N.E.2d 971; see also Portsmouth Charter, Sections 143 ("the provisions of the general election laws of the State shall apply to all such elections *except as otherwise provided by this Charter*" [emphasis added]) and 165 ("All general laws of the State applicable to municipal corporations, now or hereafter enacted, and *which are not in conflict with the provisions of this Charter * * ** shall be applicable to this City" [emphasis added]).

{¶ 41} Notwithstanding the requirements of R.C. 3501.38(E)(1) detailing the contents of a circulator statement for each petition paper, Section 27 of the Portsmouth Charter provides otherwise by requiring that each petition paper instead include the specified circulator affidavit, which affidavit must be strictly construed:

{¶ 42} "The affidavit attached to each petition paper shall be as follows:

{¶ 43} "State of Ohio,

{¶ 44} "County of Scioto, SS.

{¶ 45} "I, _____, being duly sworn, depose and say that I, and I only personally circulated the foregoing petition paper and that all the signatures appended thereto were made in my presence and are the genuine signatures of the persons whose names they purport to be.

"Signed _____

"Subscribed and sworn to before me this ____ day of _____, 19__

"_____

"Notary Public

{¶ 46} "The foregoing affidavit shall be strictly construed and any affiant convicted of swearing falsely as regards any particular thereof shall be guilty of perjury."

{¶ 47} In effect, the specific Section 27 circulator affidavit for municipal initiative, referendum, and recall petitions in Portsmouth stands in lieu of the general state-law requirement of an R.C. 3501.38(E)(1) circulator statement for

petitions. Section 27 of the Portsmouth Charter requires that each petition paper include a circulator affidavit made under penalty of perjury, a felony of the third degree, see R.C. 2921.11(F), that states that (1) the circulator personally circulated the petition paper, (2) all signatures appended thereto were made in the circulator's presence, and (3) the signatures are the genuine signatures of the persons whose names they purport to be.

{¶ 48} The charter provision requiring strict construction of the affidavit evinces an unmistakable intent on the part of the Portsmouth electors who adopted it that no comparable state-law requirement regarding the circulator's statement on petitions is applicable. The affidavit required by the charter serves the same purpose as the statement required by statute — it prevents fraud by supplying the circulator's attestation that the circulator witnessed each of the signatures on the part-petition and that the signatures are genuine. In fact, until it was amended in 1974, R.C. 3501.38(E) likewise required a circulator *affidavit* instead of a circulator *statement* on each part-petition. See 135 Ohio Laws, Part II, 799. The charter provision, by its own terms, demands strict construction of the specified form of the circulator affidavit and prevails over the conflicting state statute.

{¶ 49} This result is consistent with precedent. In *Ditmars*, 94 Ohio St.3d at 475, 764 N.E.2d 971, we held that because Section 42 of the Columbus Charter "requires circulator affidavits and [R.C. 3501.38(E)] does not * * *, the charter provision prevails."

{¶ 50} Murray's reliance on our decision in *Finkbeiner*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, to claim that the circulator-affidavit requirement specified in Section 27 of the Portsmouth Charter does not conflict with the circulator-statement requirement of R.C. 3501.38(E), is misplaced. In *Finkbeiner*, we held that a recall petition that failed to include the R.C. 3501.38(J) election-falsification statement was defective because nothing in the Toledo Charter conflicted with that provision. *Finkbeiner* is distinguishable because in

that case, the recall provisions of the Toledo Charter and other general petition-form requirements of the charter were silent on the requirement of an election-falsification statement. Id. at ¶ 34. Further, Toledo voters had repealed the specific recall-petition requirements in 1934 and had rejected a 1959 amendment to reinstate those requirements. Id. No comparable facts are present here.

{¶ 51} Notably, the Toledo Charter (1) did not specify a form for petitions that explicitly required strict construction and (2) did not expressly exclude the election-falsification statement. By contrast, Section 27 of the Portsmouth Charter specifies the complete form for the circulator affidavit for petitions and mandates strict construction of that form. And the mere fact that the petition here also included the R.C. 3501.38(J) election-falsification statement does not alter our conclusion. Although that statement would not apply to a petition circulator, who would be governed by the charter's requirement of an affidavit, subjecting the circulator to perjury for swearing falsely, R.C. 2921.13(A)(6), it would still be effective for any noncirculator committing election falsification regarding the petition.

{¶ 52} Further, Murray's reliance on various other cases like *Rust* and *State ex rel. Macko v. Monzula* (1976), 48 Ohio St.2d 35, 2 O.O.3d 129, 356 N.E.2d 493, is also misplaced because these cases do not address any claimed conflict between R.C. 3501.38(E) and municipal charter provisions. Although Murray may disagree with whether the charter provision satisfies the fraud-prevention objective as well as its statutory counterpart, it was within the municipality's constitutional home-rule authority to resolve such policy concerns by adopting its own specific provision. "[N]either the wisdom nor the desirability of these [charter] provisions is subject to judicial review." *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 127, 698 N.E.2d 987; see also *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 324, 631 N.E.2d 1048, quoting *Fuldauer v. Cleveland* (1972), 32 Ohio St.2d 114, 118, 61 O.O.2d 374, 290

N.E.2d 546 ("the feasibility or wisdom of charter provisions is 'not a matter for our consideration'").

**{¶ 53}** Therefore, the board of elections neither abused its discretion nor clearly disregarded applicable law by denying Murray's protest premised on the recall petition's purported failure to comply with R.C. 3501.38(E)(1).

### Mathematical Error

**{¶ 54}** The board of elections concedes that it abused its discretion and clearly disregarded applicable law by initially denying Murray's protest concerning part-petition 2. The clerk determined that the part-petition contained 15 valid signatures, but she erroneously counted as valid one of the signatures that had been crossed out. The board later corrected this mistake at its November 17 meeting. Therefore, insofar as Murray seeks a writ of mandamus to compel the board to correct this mistake, her claim has now been rendered moot. See *State ex rel. Law Office of Montgomery Cty. Public Defender v. Rosencrans*, 111 Ohio St.3d 338, 2006-Ohio-5793, 856 N.E.2d 250, ¶ 15 ("Subsequent performance of the act requested in the mandamus action generally renders the action moot"); *State ex rel. Dehler v. Kelly*, 123 Ohio St.3d 297, 2009-Ohio-5259, 915 N.E.2d 1223, ¶ 1 ("Mandamus will not compel the performance of an act that has already been performed").

### Section 27 Signature Requirement

**{¶ 55}** Murray finally contends that the board of elections erred in failing to sustain her protest against part-petition 5 because it was not signed by the circulator in the blank required by Section 27 of the Portsmouth Charter. Part-petition 5 contained seven valid signatures.

**{¶ 56}** At its regular meeting on November 17, which occurred after this case was instituted but before the board of elections and its members filed their answer, the board of elections revised its previous determination that the recall petition contained 1,155 valid signatures by deducting from this total the signature

on part-petition 2 that Murray had protested and by adding three signatures that had been invalidated by the city clerk and had been the subject of the recall committee's November 8 protest. This resulted in the board's November 17 finding that the recall petition contained 1,157 valid signatures, which exceeded the minimum of 1,148 valid signatures required for the recall election by nine signatures. Although this fact was not evident at the time that Murray commenced this expedited election case, we consider it because it is relevant to Murray's claims. See, e.g., *State ex rel. Brown v. Lemmerman*, 124 Ohio St.3d 296, 2010-Ohio-137, 921 N.E.2d 1049, ¶ 12, quoting *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 54 (" 'in mandamus actions, a court is not limited to considering the facts and circumstances at the time a proceeding is instituted but should consider the facts and conditions at the time it determines whether to issue a peremptory writ' ").

{¶ 57} In her reply brief, Murray asserts that the board of elections abused its discretion and clearly disregarded applicable law by granting the recall committee's protest and validating the three signatures that the clerk had invalidated. She claims that the board erred by considering the merits of the untimely protest without holding a hearing. Murray's initial merit brief, however, which was filed six days after the board's November 17 revision of the number of total valid signatures and five days after the board of elections and its members relied on this decision in their answer, includes no argument concerning this contention. The parties' stipulated facts, which were filed on the same date as Murray's initial merit brief, also included evidence of the board's November 17 revised determination.

{¶ 58} Because Murray could have raised this argument in her initial merit brief but failed to do so, we do not address this claim. See *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 61

(relators in expedited election case were forbidden to raise new argument in their reply brief that was not raised in their initial merit brief); *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 61 (court, in an election-related writ case, will not address request for relief that was raised in relators' complaint and resuscitated in reply brief, but was not included in their initial merit brief).

{¶ 59} Moreover, even if Murray's contention concerning part-petition 5 is correct, the number of valid petition signatures would be reduced from 1,157 to 1,150, which is still more than the 1,148 signatures required for the recall election. "[W]e will not issue advisory opinions, and this rule applies equally to election cases." *State ex rel. Barletta v. Fersch*, 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 22; *State ex rel. LetOhioVote.org v. Brunner*, 125 Ohio St.3d 420, 2010-Ohio-1895, 928 N.E.2d 1066, ¶ 22.

{¶ 60} Murray finally claims that based on the specified grounds of her protest, she has thus established that the board of elections should have invalidated the recall petition because the petition failed to contain a sufficient number of valid signatures. But for the reasons previously set forth, she has failed to establish either an abuse of discretion or a clear disregard of applicable law by the board of elections that would result in an insufficient number of signatures on the recall petition.

{¶ 61} Therefore, Murray is not entitled to the requested extraordinary writ of prohibition to prevent the recall election. We deny the writ of prohibition and dismiss the mandamus claim.

Judgment accordingly.

PFEIFER, ACTING C.J., and BROGAN, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for BROWN, C.J.

_____

McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, J. Corey Colombo, and Michael P. Stinziano, for relator.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Chadwick K. Sayre, Assistant Prosecuting Attorney, for respondents.

_____