[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Walker v. LaRose*, Slip Opinion No. 2021-Ohio-825.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-825

THE STATE EX REL. WALKER ET AL. *v.* LAROSE, SECY., ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Walker v. LaRose*, Slip Opinion No. 2021-Ohio-825.]

*Elections—Mandamus—Writ of mandamus sought to compel secretary of state, county board of elections, and city to change ballot language of a local issue on the May 4, 2021 primary-election ballot or to strike issue from the ballot entirely—Secretary of state and city not proper respondents for relief sought—Board of elections did not abuse its discretion or disregard applicable law in approving ballot language for local issue under R.C. 3505.06—Writ denied.*

(No. 2021-0264—Submitted March 12, 2021—Decided March 17, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relators, Patricia A. Walker and Ralph E. Jocke, seek a writ of mandamus compelling respondents, Ohio Secretary of State Frank LaRose, the Medina County Board of Elections (the "board"), and the city of Medina (the "city"), to change the ballot language of a local issue on the May 4, 2021 primary-election ballot. Alternatively, relators seek a writ of mandamus ordering respondents to strike the issue from the ballot entirely.

{¶ 2} We deny the writ. Neither the secretary of state nor the city is a proper respondent for the relief relators seek. And the board did not abuse its discretion or disregard applicable law in approving the ballot language challenged by relators.

## I. Background

{¶ 3} This case arises out of the city's efforts to move the Medina Municipal Court to the Medina County courthouse building and citizen opposition to those efforts.

{¶ 4} The Medina County courthouse consists of an original building constructed in 1841, several additions constructed starting in 1873, and an expansion constructed in 1969. In 2019, the city passed an ordinance authorizing city funds to be used for a joint courthouse project with Medina County. The city and county had agreed to design, plan, and build a courthouse that would house the Medina Municipal Court and the Medina County Court of Common Pleas.

{¶ 5} Walker states in her affidavit that she formed the Save Your Courthouse Committee (the "committee") in 2019 due to residents' concerns that the joint courthouse project would demolish part of the 1841 courthouse structure and all of the 1969 portion. Relators further contend that many of the city's residents have urged the city to expand the Medina Municipal Court at its present location instead of moving it to the Medina County courthouse.

{¶ 6} After the committee unsuccessfully sought to place a courthouse initiative on the November 2019 election ballot, *see State ex rel. Save Your Courthouse Commt. v. Medina*, 157 Ohio St.3d 423, 2019-Ohio-3737, 137 N.E.3d

1118, relators and the committee successfully placed a nearly identical initiative on the November 3, 2020 ballot. The initiative submitted to the city's electors stated:

> Without a majority vote of the qualified electors who are residents of the City of Medina, Ohio, ("the City"), the City shall not:
>
> 1) authorize, appropriate or spend any funds for, or
>
> 2) use any city resources to carry out, or facilitate carrying out, any demolition or construction activity (whether internal or external) at the Medina County Courthouse or any structure located on the east side of the Medina Public Square including, but not limited to, 72 through 99 Public Square, Medina, Ohio.
>
> This restriction shall have the effect of law and shall be effective for a period of five (5) years.

The initiative (sometimes referred to as "Issue 7") passed with 62 percent of the vote.

{¶ 7} Despite the passage of the initiative, the city moved forward with the courthouse project. On December 30, 2020, the Medina City Council held a special meeting to consider Ordinance No. 222-20, which proposed for submission to the city's electors a request to approve relocation of the municipal court to the 1969 courthouse. The issue approved by the city council stated:

> The City of Medina, Ohio, is authorized to appropriate and expend funds and use city resources to locate the Medina Municipal Court inside of the Medina County 1969 courthouse located at 93 Public Square so as to preserve the 1969 courthouse as a court building located on the east side of Medina Public Square.

The city council passed Ordinance No. 222-20 at the December 30 special meeting. The ordinance also provided that the issue would be submitted to city electors at a special election, appearing on the May 4, 2021 primary-election ballot.

{¶ 8} The city filed Ordinance No. 222-20 with the board on January 26, 2021, requesting placement on the May 4 ballot. The board prepared ballot language for the proposed ordinance and transmitted the ballot language to the secretary of state's office on February 3 for approval under R.C. 3501.05(J). The secretary's office approved the ballot language on February 17. The language reads:

**Proposed Ordinance**
**City of Medina**
**Ordinance No. 222-20**
**A majority affirmative vote is necessary for passage.**

Shall the City of Medina, Ohio, be authorized to appropriate and expend funds and use city resources to locate the Medina Municipal Court inside of the Medina County 1969 courthouse located at 93 Public Square so as to preserve the 1969 courthouse as a court building on the east side of Medina Public Square?

**O  YES**
**O  NO**

(Boldface sic.)

{¶ 9} Prior to the secretary of state's approval of the ballot language, relators filed a letter with the board on February 12, stating their position that Ordinance No. 222-20 required more than a majority affirmative vote for passage at the May 4 election. Relying on the language of the courthouse initiative passed

4

in November, relators contended that the ordinance required "a majority vote of all of the people who live in Medina City and who are qualified to vote in the [May 4, 2021] Primary in order to pass." Relators presented the same argument at a board meeting on February 16. When the board declined to change the language relating to the number of votes required for passage of Ordinance No. 222-20, relators filed a protest with the board on February 19, reiterating their objection to the language approved for the ballot. In their protest, relators proposed that the following language be approved:

> The City of Medina, Ohio is authorized to appropriate and expend funds and use City resources to locate the Medina Municipal Court inside of the Medina County 1969 Courthouse located at 93 Public Square. This partially overrules Issue 7 that was passed on November 3, 2020. A majority of the qualified electors who are residents of the City of Medina, Ohio is necessary for passage.

The board sent relators' protest to the secretary of state but took no other action on it. The language for Ordinance No. 222-20 on the May 4 election ballot remains the same as that approved by the board on February 3 and the secretary on February 17.

{¶ 10} Relators filed this action on February 26, seeking a writ of mandamus to compel respondents to amend the ballot language for Ordinance No. 222-20 as relators requested. Relators argue that (1) the approved ballot language inaccurately states that only a majority affirmative vote is required for passage and (2) the ballot language should be amended as they request because the approved language is unlawfully persuasive and contains no title for the proposed ordinance. In the alternative, relators request a writ of mandamus directing respondents to remove Ordinance No. 222-20 from the May 4 ballot because the ballot measure

did not include a title when it was filed with the board. We set an expedited schedule for respondents to answer and for the parties to file their evidence and briefs. ___ Ohio St.3d ___, 2021-Ohio-555, ___ N.E.3d ____. The parties have submitted their evidence and have fully briefed this matter for our decision.

## II. Analysis

{¶ 11} To be entitled to a writ of mandamus, relators must establish by clear and convincing evidence that (1) they have a clear legal right to the requested relief, (2) respondents have a clear legal duty to provide it, and (3) relators do not have an adequate remedy in the ordinary course of law. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. Because of the proximity of the May 4 election, relators lack an adequate remedy in the ordinary course of law. *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 22.

{¶ 12} For the remaining requirements of a clear legal right and a clear legal duty, in the absence of any evidence of fraud or corruption, the dispositive issue is whether respondents abused their discretion or clearly disregarded applicable law in adopting the ballot language at issue and in allowing the ordinance to be submitted to the Medina electors. *See id.* at ¶ 23. Relators do not allege fraud or corruption in this case.

### A. Mandamus Claims Against the Secretary of State

{¶ 13} In neither their complaint nor their merit brief do relators cite a statute imposing a duty on the secretary of state to amend ballot language for a local issue or to strike such an issue from the ballot entirely. Though the secretary acknowledges that R.C. 3501.05(J) directs him to "give final approval to ballot language for any local question or issue approved and transmitted by boards of elections," he argues that his only role for local issues under R.C. 3501.05(J) is to review and approve ballot language as to form. *See State ex rel. Perry Twp. Bd. of Trustees v. Husted*, 154 Ohio St.3d 174, 2018-Ohio-3830, 112 N.E.3d 889, ¶ 15.

The secretary complied with that duty in this case and relators do not argue that R.C. 3501.05(J) imposes any further duty upon the secretary to review Ordinance No. 222-20 for content. Accordingly, relators' requested relief is not proper against the secretary. *See State ex rel. Cincinnati for Pension Reform v. Hamilton Cty. Bd. of Elections*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, ¶ 85.

{¶ 14} Rather than dispute that R.C. 3501.05(J) empowers the secretary of state to review local ballot issues only for form and not for content, relators in their reply brief cite R.C. 3505.01 and 3501.11(V) as the sources of the secretary's duty to revise the ballot language. We need not address these arguments, as they were raised for the first time in a reply brief. *See State ex rel. Murray v. Scioto Cty. Bd. of Elections*, 127 Ohio St.3d 280, 2010-Ohio-5846, 939 N.E.2d 157, ¶ 58. In any event, relators do not explain how these statutes support a duty on the part of the secretary to amend the ballot language in the manner they seek.

### B. Mandamus Claims Against the City

{¶ 15} As to the city, relators contend that (1) the city's submission of Ordinance No. 222-20 for a special election was legally improper, (2) the city enacted improper persuasive language in the ordinance, and (3) the city failed to include a title in the version of the ordinance submitted to the board. Relators' contention that the city's submission of Ordinance No. 222-20 for the ballot is invalid does not, however, inform the issue whether they may obtain a writ of mandamus ordering the city to perform the acts requested. Relators cite no statute stating that the city has the power, much less a duty, to amend board-approved ballot language or to remove an issue from the ballot.

### C. Mandamus Claims Against the Board

{¶ 16} Under R.C. 3501.11(V), the board has a duty to "[g]ive approval to ballot language for any local question or issue." Further informing the board's duty in this regard is R.C. 3505.06(D), which provides:

The printed matter pertaining to each question or issue on the ballot shall be enclosed at the top and bottom thereof by a heavy horizontal line across the width of the ballot. Immediately below such top line shall be printed a brief title descriptive of the question or issue below it, such as "Proposed Constitutional Amendment," "Proposed Bond Issue," "Proposed Annexation of Territory," "Proposed Increase in Tax Rate," or such other brief title as will be descriptive of the question or issue to which it pertains, together with a brief statement of the percentage of affirmative votes necessary for passage, such as "A sixty-five per cent affirmative vote is necessary for passage," "A majority vote is necessary for passage," or such other brief statement as will be descriptive of the percentage of affirmative votes required.

This court has recognized mandamus as an appropriate remedy to compel a board of elections to amend ballot language to comply with R.C. 3505.06. *Cincinnati for Pension Reform*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, at ¶ 20, 68.

*1. Percentage of votes necessary for passage*

{¶ 17} Relators argue that the board's approved ballot language for Ordinance No. 222-20 is invalid because it incorrectly states: "**A majority affirmative vote is necessary for passage**." (Boldface sic.) Relators argue that this language is inconsistent with the initiative passed by city electors in November 2020, which prohibits the city from authorizing, appropriating, or spending funds or using city resources to facilitate demolition or construction at the Medina County Courthouse for a five-year period, without "a majority vote *of the qualified electors who are residents of the City of Medina*." (Emphasis added.)

{¶ 18} Respondents do not dispute that passage of Ordinance No. 222-20 would authorize the expenditure of city funds and resources for "demolition or

construction activity" at the Medina County courthouse. Therefore, because of the "majority vote of the qualified electors" language in the voter-approved initiative, relators contend that passage of Ordinance No. 222-20 requires an affirmative vote of a majority of *all* qualified electors of the city, including electors who do *not* vote on the issue at the May 4 election.

{¶ 19} The parties do not cite a case in which this court has decided what the term "majority vote of the qualified electors" means in a context like this one. But in *Rike v. Floyd*, 3 Ohio C.D. 359, 378, 6 Ohio C.C. 80 (1891), *aff'd without opinion*, 53 Ohio St. 653, 44 N.E. 1136 (1895), an Ohio circuit court of appeals decided a dispute relating to the meaning of the phrase "two-thirds of the members of the whole society," as used in a church's constitution. Relying on cases interpreting election laws from other states, the court of appeals held that the phrase meant "two-thirds of those members who vote." *Id.*, citing *Carroll Cty. Bd. of Supervisors v. Smith*, 111 U.S. 556, 4 S.Ct. 539, 28 L.Ed. 517 (1884), and *Walker v. Oswald*, 68 Md. 146, 11 A. 711 (1887).

{¶ 20} *Rike* is consistent with cases outside of Ohio in which courts have interpreted language similar to what is at issue here to mean that a majority of votes actually cast is sufficient for passage of a ballot measure. In *Carroll Cty.*, the United States Supreme Court interpreted a Mississippi constitutional provision that required "assent of two-thirds of the qualified voters of [a] county" to approve issuance of municipal railroad bonds. *Id.* at 561. Similar to relators here, the appellants in *Carroll Cty.* argued that the "qualified voters" referred to in the Mississippi Constitution meant "those who have been determined by the registrars to have the requisite qualifications of electors * * * and not merely two-thirds of such actually voting at an election for that purpose." *Id.* Rejecting the argument, the Supreme Court held:

The number and qualification of voters at such an election, is determinable by its result, as canvassed, ascertained and declared by the officers appointed to that duty, or as subsequently corrected by a contest or scrutiny in a direct proceeding, authorized and instituted for that purpose; it cannot be contested in any collateral proceeding, either by inquiry as to the truth of the return, or by proof of votes not cast, to be counted as cast against the proposition, unless the law clearly so requires. * * * The assent of two-thirds of the qualified voters of the county, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, intended by that instrument, meant the vote of two-thirds of the qualified voters present and voting at such election in its favor, as determined by the official return of the result. *The words "qualified voters" * * * must be taken to mean not those qualified and entitled to vote, but those qualified and actually voting.* In that connection a voter is one who votes, not one who, although qualified to vote, does not vote.

(Emphasis added.) *Id.* at 565. More than 50 years later, the Supreme Court likewise noted that election laws providing for approval by a specified majority of an electorate are generally construed to require only the consent of the specified majority of those participating in the election. *Virginian Ry. Co. v. Sys. Fedn. No. 40*, 300 U.S. 515, 560, 57 S.Ct. 592, 81 L.Ed. 789 (1937). "Those who do not participate 'are presumed to assent to the expressed will of the majority of those voting.' " *Id.*, quoting *Cass Cty. v. Johnston*, 95 U.S. 360, 369, 24 L.Ed. 416 (1877).

{¶ 21} Federal district courts considering the issue have followed suit. In *Euwema v. Todman*, 323 F.Supp. 167 (D.V.I.1971), a Virgin Islands law authorized the legislature to lower the legal voting age to 18 years old "if a majority of the

qualified voters in the Virgin Islands approve in a referendum election held for that purpose." *Id.* at 169. In litigation to determine the results of a referendum on the issue, the court adopted the view that the majority of "qualified voters" meant the majority of the qualified voters *who actually voted*. *Id.* at 171. "To hold otherwise would be to permit an indifferent minority to prevent a determination of issues and thus impede or totally obstruct vital governmental processes and interests." *Id. Accord Alaska Native Assn. of Oregon v. Morton*, 417 F.Supp. 459, 467-468 (D.D.C.1974) (interpreting "a majority of all eligible Natives" as used in a federal statute to mean a majority of those who voted on the issue).

{¶ 22} Courts of our sister states have decided the issue in the same manner. For example, in *Munce v. O'Hara*, 340 Pa. 209, 16 A.2d 532 (1940), a statutory provision allowed any county, city, borough, or township to discontinue the use of voting machines if a proposition was approved "by a majority vote of its qualified electors cast at any general election." *Id.* at 210. The Pennsylvania Supreme Court rejected the argument that the statute required a majority vote of *all* qualified electors. "[T]he practical working of the elective system necessarily requires that those who abstain from voting be considered as acquiescing in the result declared by a majority of those who exercise the suffrage." *Id.*; *see also Wilcox v. Bd. of Commrs. of Sinking Fund of Detroit*, 262 Mich. 699, 705, 247 N.W. 923 (1933) ("it is contrary to our system of government to count electors on a question who are not sufficiently interested to vote"). Accordingly, the court in *Munce* adhered to the rule that "where a statute provides for a vote of 'a majority of the voters,' 'a majority of the legal voters,' 'a majority of the qualified voters,' etc., all that is required is a majority of those actually voting, unless a contrary legislative intention and purpose is very clearly expressed." *Munce* at 211; *see also Chapel v. Allen*, 334 Mich. 176, 180-181, 54 N.W.2d 209 (1952); *Cashman v. Entwistle*, 213 Mass. 153, 155-156, 100 N.E. 58 (1912).

{¶ 23} Relators do not offer an argument to discredit or distinguish the foregoing line of case law, much less cite any contrary authority. Relators rely on R.C. 3519.21, which states that all issues submitted to the electors are approved by an affirmative vote of a majority of votes cast "[e]xcept as otherwise provided by law," and argue that the November 2020 initiative is a law that provides that more than a simple majority of votes cast is required for passage of Ordinance No. 222-20. But under the weight of authority discussed above, language stating "a majority vote of the qualified electors" is not enough to depart from the general rule that a simple majority of votes cast is all that is required for passage of a ballot issue. For relators' argument to hold sway, there must be a "very clearly expressed" legislative intention that a greater number of affirmative votes is required. *Munce* at 211.

{¶ 24} In their reply brief, relators argue for the first time that the different statutory definitions of "qualified elector" and "voter" in R.C. 3501.01 support their position. R.C. 3501.01(N) defines "qualified elector" as "a person having the qualifications provided by law to be entitled to vote" while R.C. 3501.01(O) defines "voter" as "an elector who votes at an election." Relators argue that this difference is significant in determining the meaning of "a majority vote of the qualified electors," as used in the November 2020 initiative. However, as we noted previously, we need not consider an argument raised for the first time in a reply brief. *Murray*, 127 Ohio St.3d 280, 2010-Ohio-5846, 939 N.E.2d 157, at ¶ 58.

{¶ 25} Under these circumstances, the board's decision to adhere to the general rule requiring a majority affirmative vote to be sufficient for passage was not an abuse of discretion or in clear disregard of applicable law.

### 2. *Relators' proposed amendments to the ballot language*

{¶ 26} Relators also argue that the board abused its discretion and disregarded applicable law by allowing ballot language that was inappropriately persuasive and misleading. Informing the inquiry on this issue is R.C. 3505.06(E), which provides:

> The questions and issues ballot need not contain the full text of the proposal to be voted upon. A condensed text that will properly describe the question, issue, or an amendment proposed by other than the general assembly shall be used as prepared and certified by the secretary of state for state-wide questions or issues or by the board [of elections] for local questions or issues. If other than a full text is used, the full text of the proposed question, issue, or amendment together with the percentage of affirmative votes necessary for passage as required by law shall be posted in each polling place in some spot that is easily accessible to the voters.

{¶ 27} Relators complain that the phrase "so as to preserve the 1969 courthouse as a court building" is misleading because the 1969 portion of the courthouse is not in jeopardy of being used for any other purpose. Relators further contend that the phrase is designed to appeal to preservationist voters and is therefore unlawfully persuasive language. Relators also argue that the board should be compelled to add the "informational language" they have proposed.

{¶ 28} R.C. 3505.06(E) does not provide a basis for the mandamus relief relators seek. The statute allows the board to place a summary of an issue—a "condensed text"—on the ballot in lieu of the issue's full text. When a board of elections prepares a condensed text, it must not adopt language that is "in the nature of a persuasive argument in favor of or against the issue." *Beck v. Cincinnati*, 162 Ohio St. 473, 474-475, 124 N.E.2d 120 (1955); *see also State ex rel. Kilby v. Summit Cty. Bd. of Elections*, 133 Ohio St.3d 184, 2012-Ohio-4310, 977 N.E.2d 590, ¶ 19. In this case, however, the board has *not* drafted a summary of Ordinance No. 222-20 for the ballot in lieu of the full text. And relators have cited no case standing for the proposition that the board must amend allegedly persuasive and

misleading language when the full text of an issue is placed on the ballot. The board therefore did not abuse its discretion or disregard applicable law in approving the ballot language.

### 3. Title of the proposed ordinance

{¶ 29} Likewise unpersuasive is relators' claim that the approved ballot language for Ordinance No. 222-20 lacks a valid title. R.C. 3505.06(D) requires only a "brief title descriptive of the question or issue below it" and provides examples that would suffice, "such as 'Proposed Constitutional Amendment,' 'Proposed Bond Issue,' 'Proposed Annexation of Territory,' [or] 'Proposed Increase in Tax Rate.' " The language approved by the board in this case contains the title, "**Proposed Ordinance City of Medina Ordinance No. 222-20**." (Boldface sic.) By the statute's plain terms, nothing more is required for the title to comply with R.C. 3505.06(D).

{¶ 30} Relators rely on *State ex rel. Esch v. Lake Cty. Bd. of Elections*, 61 Ohio St.3d 595, 575 N.E.2d 835 (1991), for the proposition that the city's version of Ordinance No. 222-20 submitted to the board was invalid because it did not include a title. *Esch*, however, is inapposite. That case involved an initiative petition that was circulated without a title for the proposed ordinance, as required by R.C. 731.31. *Id.* at 597. R.C. 731.31 applies to initiative petitions circulated for signatures; it does not apply to the ballot measure submitted by the city in this case.

### III. Conclusion

{¶ 31} Relators have failed to show that the secretary of state and the city are proper respondents for the relief they seek. And they have further failed to show that the board abused its discretion or disregarded applicable law in approving the ballot language for Ordinance No. 222-20. We therefore deny the writ.

Writ denied.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., not participating.

––––––––––––––––––––

Walker & Jocke Co., L.P.A., Patricia A. Walker, and Ralph E. Jocke, for relators.

Dave Yost, Attorney General, and Heather L. Buchanan and Caitlyn Nestleroth Johnson, Assistant Attorneys General, for respondent Secretary of State Frank LaRose.

Baker, Dublikar, Beck, Wiley & Mathews, Tonya J. Rogers, James F. Mathews, and Gregory A. Beck; and Gregory A. Huber, Medina Law Director, for respondent city of Medina.

S. Forrest Thompson, Medina County Prosecuting Attorney, and Michael K. Lyons and Samuel A. Sheffield, Assistant Prosecuting Attorneys, for respondent Medina County Board of Elections.

––––––––––––––––––––